# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RECEIVED
APR 27 2015
APR 2 7 2015

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

United States of America ex rel.

Robert James Chapman #B78512
(Full name and prison number)
(Include name under which convicted)

PETITIONER

vs.

Kimberly Butler
(Warden, Superintendent, or authorized
person having custody of petitioner)

RESPONDENT, and

**(Fill in the following blank only if judgment
attacked imposes a sentence to commence
in the future)**

ATTORNEY GENERAL OF THE STATE OF

Illinois
(State where judgment entered)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

15cv3742
Judge Jorge L. Alonso
Magistrate Judge Susan E. Cox
PC4

Case Number of State Court Conviction:

05CF391

## PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered: Circuit Court of the Twelfth Judicial Circuit IN Will County, Illinois

2. Date of judgment of conviction: July 26, 2007

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)
   1st Degree Murder

4. Sentence(s) imposed: 60 years Illinois Department of Correction

5. What was your plea? (Check one)    (A) Not guilty    (✓)
                                      (B) Guilty        (  )
                                      (C) Nolo contendere (  )

   If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

_____

Reviewed: 8/2013

**PART I – TRIAL AND DIRECT REVIEW**

1. Kind of trial: (Check one):     Jury (✓)       Judge only ( )

2. Did you testify at trial?     YES ( )       NO    (✓)

3. Did you appeal from the conviction or the sentence imposed? YES (✓) NO ( )

    (A) If you appealed, give the

       (1) Name of court: _Third District Appellate Court_

       (2) Result: _Affirmed_

       (3) Date of ruling: _January 5, 2011_

       (4) Issues raised: _1) Trial Court fail to strictly comply with Supreme Court Rule 431(b) (2) The Court erred when it permitted the State to present evidence that defendant had been previously convicted of domestic battery against Frazier (Section 115-20 of the Code (725 ILCS 5/115-20_

    (B) If you did not appeal, explain briefly why not: _____

4. Did you appeal, or seek leave to appeal, to the highest state court? YES (✓) NO ( )

    ( ) If yes, give the

       (1) Result: _Affirmed_

       (2) Date of ruling: _March 22, 2012_

       (3) Issues raised: _The Court erred when it permitted the State to present evidence that defendant had been previously convicted of domestic batter against Frazier in violation of 725 ILCS 5/115-20_

    (B) If no, why not: _____

5. Did you petition the United States Supreme Court for a writ of *certiorari*? Yes ( ) No (✓)

    If yes, give (A) date of petition: _____ (B) date *certiorari* was denied: _____

Reviewed: 8/2013

**PART II – COLLATERAL PROCEEDINGS**

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

   YES (✓)  NO ( )

   With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

   A. Name of court: Twelfth Judicial Circuit Court of Will County, Illinois

   B. Date of filing: December 20, 2012

   C. Issues raised: See ~~###~~ Exhibit ~~#~~ for Initial Post-Conviction ~~####~~ Exhibit K

   D. Did you receive an evidentiary hearing on your petition?  YES ( )  NO (✓)

   E. What was the court's ruling?  dismiss

   F. Date of court's ruling: January 18, 2013

   G. Did you appeal from the ruling on your petition?  YES (✓)  NO ( )

   H. (a)  If yes, (1) what was the result?  Affirmed

             (2) date of decision:  November 7, 2014

       (b)  If no, explain briefly why not: _____

   I. Did you appeal, or seek leave to appeal this decision to the highest state court?

   YES ( )  NO (✓)

       (a)  If yes, (1) what was the result?  _____

             (2) date of decision:  _____

       (b)  If no, explain briefly why not: I was advise by the Court in their Opinion not pursue an Appeal otherwise if would be unsuccessful and wholly frivolous

3

Reviewed: 8/2013

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?   YES (✓)   NO ( )

    If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

    1.    Nature of proceeding     Petition to Vacate Judgment under Section 2-1401(f)

    2.    Date petition filed     8-21-14

    3.    Ruling on the petition     dismiss

    4.    Date of ruling     10-22-14

    5.    If you appealed, what was the ruling on appeal?     Pending in 3rd District Appellate Court

    6.    Date of ruling on appeal     _____

    7.    If there was a further appeal, what was the ruling ?     _____

    8.    Date of ruling on appeal     _____

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?   YES ( )   NO (✓)

    A.  If yes, give name of court, case title and case number: _____

    _____

    B.  Did the court rule on your petition?  If so, state

        (1)  Ruling: _____

        (2)  Date: _____

4. With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition?   YES (✓)   NO ( )

    If yes, explain: because of the opion in the 3rd District Appellate Court, I file a Successive Post-Conviction Relief in The Twelfth Judicial Circuit Court of Will County Illinois and the Petition to Vacate Judgment under Section 2-1401 (f)

    _____

    _____

    _____

    _____

Reviewed:  8/2013

**PART III – PETITIONER'S CLAIMS**

1. State <u>briefly</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the <u>facts</u> supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A) Ground one    Ex Post Facto

Supporting facts (tell your story <u>briefly</u> without citing cases or law):

The charges which resulted in Petitioner's Conviction are based on Statute enacted after the allege crime was committed and without adequate notice. This Violated Petitioner right to due process and equal protection right of law as guaranteed by 5 and 14 Amendment to the U.S. and Illinois Constitution

See Attachment B
For Supporting facts

(B) Ground two    Mis Instruction

Supporting facts:

The jury verdict was rendered in the absence of proper Instruction on every burden of proof belong to Prosecution, that state Prosecution had to disprove the absence of a mitigating Circumstance when it has been appropriately raise to the Court This Violated Petitioner's right guaranteed by Amendment 5 and 6 and 14 of the U.S. and Illinois Constitution

See Attachment C
For Supporting facts

5

Reviewed: 8/2013

(C) Ground three  Prosecutorial Misconduct
Supporting facts:

Petitioner Conviction was obtained as a result of
Prosecutorial Misconduct. This violated Petitioner's
right to due process of law and equal protection right
guaranteed by Amendment 5 and 14 to the Illinois and
United State Constitution

    See Attachment D
    For supporting Facts


(D) Ground four
Supporting facts:

    See Attachment D
    For Supporting Fact for Claim
    4~8


2.  Have all grounds raised in this petition been presented to the highest court having jurisdiction?

    YES ( )  NO (✓)

3.  If you answered "**NO**" to question (2), state briefly what grounds were not so presented and why not:

I was advise by the Courts not to Pursue and continue
Appeal that it would be unsuccessful and Wholly Frivolous
because Initial Post was deficient to invoke the Acts
so I file a successful with new issue as well as old.

Reviewed: 8/2013

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (A) At preliminary hearing _____

    (B) At arraignment and plea *Julie S Keller + Lisa L Kinser*

    (C) At trial *Jaguays Edward Raymond + Zack Pollock*

    (D) At sentencing *Jaguays Edward Raymond + Zack Pollock*

    (E) On appeal *Joyce Randolph*

    (F) In any post-conviction proceeding *Durango Santiago A.  A.A.D.*

    (G) Other (state): _____

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )  NO (✓)

Name and location of the court which imposed the sentence: *Twelfth Judicial District, Will County*

Date and length of sentence to be served in the future *60 years   2-23-05 - 2-23-65*

    WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: *April 17, 2015*
    (Date)

_____
Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

*Robert Chapman*
(Signature of petitioner)

*B78512*
(I.D. Number)

*P.O. Box 1000 / 711 Kaskaskie Street*
(Address)

*Menard, IL 62259*

Reviewed: 8/2013

Attachment B

Supporting Facts

# Ground one
## Ex Post Facto

The charges which resulted in Petitioner Conviction are based on Statutes enacted after the allege crime was committed and without adequate notice. This Violated Petitioner right to due process and equal protection right of law as guaranteed by 5 and 14 Amendment to the U.S. and Illinois Constitution

Defendant assert that Court erred in allowing prior domestic battery conviction against Victim, Where Prosecution use 725 ILCS 5/115-20 statute to allow prior domestic battery as propensity evidence in a murder trial, which statute has no mention of murder, it did name crime which this evidence Could be use for. After defendant Conviction the legislator passed a Law in which 725 ILCS 5/115-7.4 would allow propensity evidence in a murder Case
   See exhibit

Because the Court erred in allowing Prior domestic evidence in defendant trial, it prejudice the defendant by allowing the jury to take evidence, which had nothing to do with the murder, had this evident been Kept out their's a reasonable probability that the trial would have been different

Attachment C

Supporting Fact

# Ground Two
## MisInstruction

The jury verdict was rendered in the absence of proper Instruction on every burden of proof belong to Prosecution, that State's Prosecution had to disprove the absence of a mitigating Circumstance when it has been appropriately raise to Court This Violated Petitioner right guaranteed by Amendment 5 and 6 and 14 of the U.S. and Illinois Constitution.

1. Petitioner assert at the time of his trial, the Illinois Pattern Instruction that guided the Jury according to the Law Fail to hold Prosecution to their Continue burden of proof When mitigating Circumstance has been appropriately raise to the Court.       See Exhibit

2 In instant Case Jury Instruction state that defendant is not required to prove his Innocence nor is He required to present any evidence in order to establish the existence of a mitigating Factor, then it tells Jury that defendant has the burden of proving by a preponderance of the evidence that mitigating Factor is present.      See Exhibit

3. Petition further state that throughout the Closing argument and instruction, their was Continue mention that defendant

3. had burden of proof, that further takes away the Stat
Continue burden of proof of proven the absence of a
mitigating Circumstance                    See Exhibit

4. Petition maintain that the Illinois Pattern Instruction that
were read aloud and provided to the jury by the Judge never
properly advised the Jury of the State Full and Continue
burden of proof beyond a reasonable doubt as to the
Absence of a mitigating Circumstance under the "AND" reading
of 720 ILCS 5/9-2(c), where Prosecution is required to
prove absence of Circumstance at the time of the Killing

5 Especiall, in a case such as this, when defendant has
appropriately raise, an Affirmative Defense to Court
See Exhibit            and the State case presented
evidence to that fact through testimony of State Witness

6 Because defendant didn't put forth a defense, prejudice
is presume, because Jury could have easily assume or made
this judgment that their isn't a mitigating Circumstance, Cause
defendant didn't put forth defense and State just have to
prove that I Kill the Victim, with no other burden

Attachment D

# Claim 3

## Petitioner was denied due process and equal protection rights to Fair Trial

Petitioner's Conviction was obtained as a result of prosecutorial misconduct. This violated Petitioner's right to due process of of law and equal protection right guaranteed by Amendment 5 and 14 to the Illinois and United State Constitution

Petitioner assert Prosecutorial misconduct in that:

A. Prosecution solicited/induce Ms Karen Bergin into making a false statement during trial, Where State Continue to ask her (their witness over and over again, evening after stating She wasn't sure until she finally stated to the Jury "that defendant had her call 911 for himself. Prosecution Knew that it wasn't true. It's clear by the evidence of 911 tape recorded Conversation of Ms Bergin to Operator (defendant doesn't have in his possession and the Police report **see exhibit** _A_ that emergency respond went directly to the Victim, and officer when he arrive to the defendant state in his report that He call ambulance service for help for the defendant see exhibit _A_

Because the Prosecution fail to put forth or correctly present the truth of their witness statement, which if truthful of their witness would have been put forth and taken as true, it would put the whole case in such a different light, their is a reasonable possibility that defendant trial would have been different.


B. Prosecution violate 115-10.1 by allowing inconsistent testimony of Pastor Herman Ware to go uncorrected as to defendant tell him that he started the fire, on the street nor hospital, had this inconsistent testimony not been allowed, the State wouldn't have been able to show that defendant had a propensity of 1st degree murder and

to use an allege crime to contribute it to defendant.
Defendant State's that he never told anyone that he committed
this crime of Arson. See exhibit ___. It is clear that defendant
had been investigated for the Arson and Clear. See exhibit C

Because the prosecutor violate 115-10.1 of the code
by allow inconsistent testimony in defendant trial, their is
a reasonable possibility that ~~defendant~~ had this testimony been kept
out of defendant trial, that it would have been different.

C Prosecution suppressed the Victim (Cassandra Frazier)
arrest record of Domestic Violence against defendant that
was in the possession of their investigative agencies to which
the State had access, which would clearly establish the
abuse that defendant was going through and the Violence
in their relationship, that would have establish the defendant
Confession of self defense or unreasonable of self defense and
gave the Jury a different version as defendant being the
abuser in the relationship. see exhibit D

Because the State withheld this evidence from the
Court and defense and Jury, prejudice is presume, by not
allowing the Court and Jury to Consider all evidence that
was in their possession, which if Prosecutor would have
presented this evidence, their's a reasonable probability that
the evidence would have put the whole case in a different
light and trial would have been different result. negating

(16)

C. the guilt of the defendant as to offense charged or would tend to reduce his punishment.

D. Prosecution suppress the investigation report as to Pastor Ware and the defendant electronic surveilance (wire tapping) conversation that defendant was a party not informing the defense of the tape recorded conversation, also as to Assistant State Attorney consider the conversation as privilege. It was also illegally obtain. Defendant state's "He didn't give anyone permission to record his conversation see exhibit C

Because the Prosecution fail to inform the court and defense about the investigation report, that defendant and Pastor Ware conversation was privilege and illegally obtain, had this conversation been reveal to the court and defense of clergy-privilege and it been illegally obtain, their's a reasonable probability that the judge rule in defendant behalf, therefore trial would had been different.

## Claim II

Petitioner was denied due process and equal protection right to a Fair Trial

Petitioner was convicted on the basic of facts different than those facts on which the charges were based creating anvariance/Amendment. This violated Petitioner's right to due process of law and equal protection guaranteed by Amendment 5 and 14 to the Illinois and U.S. Constitution

Petitioner assert that Prosecutorial Conduct in that: Prosecution change cause of death that Grand Jury bought forth, Changing the word stabbing to Acts, which they put defense on notice that they were contributing the stabbing to acts as cause of death, which they presented Ms Bergin and the pathologist testimonyal evidence alleging defendant in some way deprived the Victim of immediate medical attention and pushing the Victim back, which constitute two of the "Acts" as amended / Variance into the instruction as cause of death, which broaden the cause of death see exhibits F

Because the prosecution use a different set of acts to Contribute death, denying defendant a chance to answer to those set of Acts prejudice the defendant, by allowing the jury to find him guilty of different set of Acts, that wasn't given by Grand Jury, which enable him to prepare. which Constitute a Void judgment.

which allow the State to use that allege Arson as other Conduct which was contribute to defendant; had this testimony been kept out of defendant trial, their a reasonable probability that trial would have been different

B. Counsel fail to object to the extensive and detail testimony describing an allege crime of arson for which the petitioner was not on trial for, nor ever arrested, nor Charge, see exhibit B

Because Counsel fail to object to that extensive and detail testimony, thereby causing prejudice, there is a reasonable probability that trial would have been different.

C. Counsel fail to object to prosecution amendment/Variance of the indictment, where state change the word Stabbing that was originally in the indictment, to Acts in the instruction. Which they put the defense on notice, that they contribute the Stabbing to Acts as cause of death, when trial begin they Contribute the pushing the Victim back, not getting help in time which they presented testimonyal evidence alleging defendant in some way deprived the Victim of immediate medical attention which caused her death, by way of testimony of Ms Bergin and pathologist. Which is different facts that Grand Jury Contribute to death    see exhibit F

C. Because of Counsel failure to object to Constructive amendment/Variance was Constitutional impermissible, his performance fell below level of representation required by Strickland and there is a reasonable probability, that for Counsel unprofessional error, the result of the proceeding would have been different

D. Counsel Fail to file a motion to suppress the illegal obtain electronic surveillance (wire tapping) Conversation between defendant and Pastor Ware, which defendant was a party, which allow the Court to base it's decision on that illegal obtain tape recorded statement, which the Prosecution stated "their wasn't any electronic surveillance (wire tapping) see exhibit E, defendant state's that He didn't give any one permission to record his statement see exhibit E

Because trial Counsel egregiously ineffective at trial because once illegally obtain electronic surveillance was presented to the court to make a ruling, he fail to raise any reasonable challenge to the evidence including clergy privilege thereby denying petitioner the level of representation required by Strickland, there is a reasonable probability that had Counsel file a Motion to suppress, the result of the proceeding would have been different

# Claim 5

## Ineffective Assistance of Trial Counsel

Petitioner was denied his right to effective assistance of Trial Counsel where Counsel (A) fail to object to Pastor Ware inconsistent testimony to Court, and Jury (B) fail to object to State's witness (Pastor Ware) extensive and detailed testimony (C) failing to object to prosecution amendment/Variance (D) failing to file a motion to suppress the illegal obtain electronic surveilance (wiretapping) of Conversation to which defendant was a party (E) failing to provide the Court with evidence that he had in his possesion as to Clergy privilege. This violated Petitioner's right to Counsel, as guaranteed by Amendment 6 and 14 to the Illinois and U.S. Constitution.

Petitioner assert that He was denied his right to effective assistance of Trial Counsel in that:

A. Trial Counsel fail to object to Pastor Ware inconsistent testimony to Court and Jury that defendant confess to Him that he committed the allege arson, where witness did not have personal Knowledge of that arson, which violate S.H.A 725 ILCS 5/115-10.1 of the Code, nor was the Witness cross examine about the allege Arson. See exhibit B

Because Counsel didnt object, he fail to raise any reasonable Challenge to the Pastor testimony

(7)

E. Counsel with held the investigation report that information from clergy was considered by Assistant State Attorney as privilege and inadmissable in Court see exhibit C defend told counsel that he and Pastor Ware was not friend and that each time they spoke, defendant invoke clergy privilege, (that everything they talk about was between the two of them. see exhibit E, C

Because Counsel was ineffective in assistant the defendant by withholding evidence as to clergy privilege, by given the investigation report to the Court, Counsel deny defendant the level of representation required by Strickland and their is reasonable probability but for Counsel unprofessional error, the result of the proceeding would have been different


## Claim 6


## Ineffective Assistance of Counsel
## Failure To Investigate


Petitioner Counsel was ineffective in failing to conduct a reasonable adequate investigation. This Violated Petitioner's right to Counsel, as guaranteed by Amendments 6 and 14 to the Illinois and U.S. Constitution

Petitioner assert Counsel was ineffective in failing to Conduct reasonable adequate investigation in that :

A. Counsel fail to visit (see exhibit G ) to Consult with defendant before trial to discuss a defense strategy, nor ask for any information or witness he may Know to help with his defense . see exhibit G

B. Counsel fail to investigate State discovery, which would have lead him/them to (1) 911 tape recorded statement of Ms Bergin call to 911 operator, as to the Statement defendant made to her as to get help for the Victim (2) the State Witness testimony as to what they were going to testify to (3) evidence that the State was going to put forward (4) defendant Confession to Detective that was alter, but included in the State discovery, It was alter in away that the question wasn't in their report.

a) by Counsel own admission, he had to wait to see what the evidence was in this case, see exhibit H
b) also when question Detective Cammock, he acknowledge the importance of the Police report see exhibit I
C) also in Counsel subpoena, ask for police report of incident between defendant and Victim. Stating that he didn't want Police report at this time for February 22, 2005 Crime. see exhibit H

C. Counsel fail to investigate the background of the Victim which would lead him to an arrest record of the Victim, along with a Police report of the incident against the defendant (that no longer exist (See exhibit D) which would have establish the credibility of defendant Confession and establish an Affirmative defense foundation as to self defense, involuntary manslaughter or 2nd degree murder. It was also relevant to show the violence of the Victim toward defendant and to defendant State of mind, when being attack with a deadly weapon. see exhibit D

D. Counsel fail to investigate and Call any witness in support of a Viable defense in that.
(1) Fail to come speak to defendant about, what he would testify to. The defendant state's "He would have testified about what happen that night and the Violence in their relationship; How he was ashamed to Call the police on the Victim and the reason he would leave the resident, When the Victim Sought him and he defended his self, he still went to jail    See exhibit G
    Because of the cumulative errors of Counsel failure to investigate, denied the defendant the level of representation required by Strickland and denied the defendant opportunity to meet the Case of the prosecution and reliability of the adversarially testing process

had Counsel done an adequate reasonable investigation and presented the mitigating evidence to the Jury, their is a reasonable probability that the trial would have been different

# 7

## Ineffective Assistance of Trial Counsel

Petitioner's Trial Counsel was ineffective in failing to, (A) put forth a mitigating defense according to 720 ILCS. 9-2 Statute, in order to recieve 2nd degree Murder. (B) File a Motion to Suppress the defendant alter recorded confession in violation section 5/103-2-1. This violated Petitioner's right to Counsel as guaranteed by Amendments 6 and 14 to the Illinois and U.S. Constitution.

Petitioner assert that Trial Counsel was ineffective in that:

A. Counsel fail to put forward a mitigating defense on the defendant behalf, by not presenting any mitigating evidence 720 ILCS 9-2 (c) states when evidence of either of the mitigating factors define in subsection (a) of this section has been presented, the burden of proof is on defendant

A. to prove either mitigating factor by a preponderance of the evidence before the defendant can be found guilty of 2nd degree murder, which mean that defense have to present Some evidence to the jury.    See exhibit

Because Counsel fail to put forward a defense according to 720 ILCS 9-2(c), He denied defendant the level of representation required by Strickland, by denying him the opportunity to be found guilty of the lesser included offense of 2nd degree murder, Had Counsel provided the Jury with a preponderance of the evidence, their is a reasonable probability that defendant trial would have been different

B. Trial Counsel fail to file motion to suppress petitioner's tape recorded statement that it had been intentionally altered which fail to meet the requirement of section 5/103-21 by not having the question that was ask in the interrogation Violated section 5/103-2.1 that every question and answer in suspect interrogation be recorded. Statement such as we been going at it for a while, had been taken out, or I am going to show you how it feel was taken out of the Context, in which it was ask, by not having the question their, it was use in advantage for the State theory see exhibit I

B. Because Counsel fail to file a Motion to Suppress defendant alter tape recorded statement, his performance fell below level of representation required by Strickland and there is a reasonable probability that, but for counsel error the result of the proceeding would have have been different.

## Claim 8

### Ineffective Assistance of Appellate Counsel

Petitioner's appellate Counsel was ineffective for failing to raise issue reserve in Post Trial Motion. This violated Petitioner's right to Counsel on direct Appeal, as guaranteed by Amendment 6 and 14 to the Illinois and U.S. Constitution.

Petition assert that Counsel was ineffective that he fail to raise on direct review that:
1. Trial Court was in violation for Pastor/Penitent Privilege between petitioner and Pastor. The trial Court erred in allowing Ware to testify about prior conversation with petitioner regarding a prior alleged arson involving the victim, when it clear that Pastor stated that defendant invoke clergy privilege during hearing and defendant stated in affidavit

1) that he alway invoke privilege when speaking with Ware because they were never friend see exhibit J C

Because Counsel didn't raise issue on direct appeal deny defendant review, his representation fail below the Strickland Standard, Had Counsel raise issue, their is a reasonable probability that conviction and sentence would have been different

2 That trial Court erred for not giving defendant's Jury instruction #3 regarding time limits relative to sufficient time for reflection in response to provocation, which was a burden of proof issue that State would have to disprove according to 9-2 (c)

3. Issue that evidence was insufficient to prove petitioner guilty beyond a reasonable doubt of 1st degree murder, when it is clear that the Victim stabbed the defendant and defendant was defending himself, which clearly establish defendant was provoke and self defense of unreasonable justification was establish. Prosecution stated in their argument that it was Sudden Passion and the defendant was Angry see exhibit K and to see the unreasonable of self-defense by Judge Statement during Sentencing see exhibit. K

In People v Reagan 99 Ill. 2d 238, 457 N.E. 2d 1260 The Illinois Supreme Court gave an example : stating Killing in self-defense is not a crime, This court further

(3) noted in Reagan that a defendant intending to defend himself although unreasonable, would not have the intent to unlawfully kill. The intent for 1st degree murder would be intent to kill without lawful justification. One cannot intend either a sudden and intense passion due to serious provocation or an unreasonable belief in the need to use deadly force. One cannot intend to unlawfully kill while at the same time intending to justifiable use deadly force. The two different intent, intent to kill unlawfully and intent to kill in self defense cannot co exist in the same crime.

Because Counsel fail to raise issue that trial Court denied, denied defendant Jury instruction and not being prove guilty beyond a reasonable doubt, denied defendant chance for review, Had these issue been raise, their reasonable probability that Court result would have been different

4. Counsel fail to argue the error under 431(b) the first prong of the doctrine of Plain error, that evidence was closely balance and that defendant didn't testify

Because Counsel fail to raise the first prong of the doctrine of Plain error, denied defendant review on that error, Had Counsel fully explain that evidence was closely balance and defendant didn't testify and that Burden was on defendant, their is reasonable probability

6 Claim IV Counsel failure to investigate; Claim V (A) Fail to put forth a mitigating defense according to 720 ILCS 9-2(c) in order to get 2nd degree murder (B) File a Motion to suppress the defendant alter recorded Confession.

Because Counsel fail to raise these issue of Prosecutorial Misconduct and ineffective assistance Trial Counsel deny the defendant a chance to be heard by the Court, deny him representation guarnteed by 6 and 14 amendment and 5 amendment, Had these issue been raise, their is reasonable probability that defendant Conviction and sentence would be different

For all of the fore going reasons state in Petitioner Petition for Post-Conviction Relief pursuant to 725 ILCS 5/122-1(f) the act, this petitioner respectfully request that his Conviction and sentence be reverse or mitigated to lesser offense or evidentiary hearing to reach the merits of petitioner's Claim

Respectfully Submitted
Robert Chapmann

Exhibit A

Ms Bergin testimony/
Police Report

1   wound?

2       A.   It seemed to be.

3       Q.   When he came up to the car, did you talk to him

4   and find out what was going on?

5       A.   Yes, I did.

6       Q.   What did he say to you, and what did you say to

7   him?

8       A.   He basically said "call an ambulance, call 911.

9   I need help.  I need help."  I don't know my exact

10  words, but that's basically what he was -- what his --

11  what he was saying.

12      Q.   Did you ask any more questions of the defendant

13  about why he needed help or what had happened?

14      A.   I asked him if he was okay.

15      Q.   How did he respond to that?

16      A.   He really didn't respond to that.  He just said

17  "call an ambulance.  Call 911."

18      Q.   Did you eventually do that?

19      A.   Yes, I did.

20      Q.   You spoke to a dispatcher?

21      A.   Yes.

22      Q.   And told him where you were?

23      A.   Yes.

24      Q.   Now, as far as where you were, you actually

| JOLIET, ILLINOIS POLICE DEPARTMENT | CON ☐ ← CHECK ONE → ☒ | PG. # 1 | 1. REPORT NUMBER 05-0222004048 |
|---|---|---|---|

| 2. IF FOLLOW-UP DATE OF THIS REPORT 02/23/05 | DATE OF ORIGINAL REPORT 02/22/05 | 3. OFFENSE AS VERIFIED Homocide | 4. OFFENSE AFTER INVESTIGATION N/A | 5. CODE N/A |
|---|---|---|---|---|

| 6. VICTIMS NAME | 7. LOCATION OF OFFENSE 120 TWIN OAKS, APT. 1 | 8. RELATED REPORT NUMBER(S) N/A |
|---|---|---|

**9. NARRATIVE – DO NOT REPEAT RESULTS OF PRELIMINARY INVESTIGATION. LIST ADDITIONAL PERSONS OR PROPERTY USING FORMAT OF BOXES 27, 28, OR 48.**

OFFICER P. RODRIGUEZ #147 ON 02/23/05 @ 0109 HRS:

Critical information:

Narrative:

I was assigned by Dispatch to the area of 120 Twin Oaks, Apt. 1, the scene of a domestic battery where both subjects were bloody. However, prior to my arrival, Dispatch advised me that the male half of the domestic battery was by Inwood. Upon arrival, I located ▮▮▮▮▮▮▮ in her vehicle and ROBERT CHAPMAN standing on the west side of the Inwood ice arena. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

I noticed that ▮▮▮▮ was bleeding profusely from what appeared to be a severe laceration to a finger on his left hand. I immediately called an ambulance for Robert. Robert was crying and appeared very upset. I then asked Robert, "What happened?" Robert replied that he had been drinking earlier in the evening and "getting high" and when he got home, he and CASSANDRA started to argue. Robert stated he then took a shower and went to bed. Robert said he woke up to Cassandra trying to stab him.

**10. CASE STATUS OF FOLLOW-UP REPORTS**

☒ CLEARED BY ARREST   ☐ WARRANT ISSUED   ☐ ADMINISTRATIVELY CLOSED   ☐ REFER TO OTHER AGENCY
☐ EXCEPTIONAL CLEARANCE   ☐ UNFOUNDED   ☐ CONTINUE INVESTIGATION BY

| 11. OFFICER ASSIGNED Rodriguez | STAR # 147 | 12. SIGNATURE OF REPORTING OFFICER | 13. SUPERVISOR AT SCENE Provenzole |
|---|---|---|---|
| 14. COPY OF REPORT TO | | 15. FIELD SUPERVISOR | 16. DUTY SUPERVISOR C000496 |

# OFFENSE REPORT
## JOLIET, ILLINOIS POLICE DEPARTMENT

| 1. OFFENSE AS VERIFIED | | 2. CODE | 3. REPORT NUMBER |
|---|---|---|---|
| FIRST DEGREE MURDER | | O11 | 05022200404B |

| 4. VICTIM NAME (LAST, FIRST, MIDDLE) | 5. SEX | 6. RACE | 7. DATE OF BIRTH | 8. HOME PHONE | 9. BUS # |
|---|---|---|---|---|---|
| FRAZIER, COSANDRA | F | B | | UNK | CELL: UNK |

| 10. VICTIM ADDRESS | 11. PLACE OF EMPLOYMENT / SCHOOL ATTENDING | 12. SECTOR OF OCCURRENCE |
|---|---|---|
| | UNK | 25 |

| 13. LOCATION IF DIFFERENT FROM VICTIM ADDRESS | COUNTY | 14. TYPE OF PLACE OF OCCURRENCE | 15. CODE | 16. SECTOR(S) ASSIGNED |
|---|---|---|---|---|
| | W | APARTMENT | 090 | 25 39 36 |

| 17. NATURE AND EXTENT OF INJURIES | 18. TREATED AT / BY | 19. DAY OF WEEK REPORTED |
|---|---|---|
| MULTIPLE STAB WOUNDS | JOLIET FIRE (PARAMEDICS) | TUESDAY |

| 20. WAS THERE A WITNESS? | YES | NO | 21. CAN SUSPECT BE NAMED? | YES | NO | 24. DATE/TIME OCCURRED | 25. DATE/TIME REPORTED |
|---|---|---|---|---|---|---|---|
| 22. CAN SUSPECT BE LOCATED? | YES | NO | 23. CAN SUSPECT BE IDENTIFIED? | YES | NO | 02/22/05 APPROX 2245 | 02/22/05 2251 |

| 26. OTHER PERSON INVOLVED | | A - ARRESTED | L - LEGAL OWNER | P - PARENT | J - JUVENILE |
|---|---|---|---|---|---|
| IDENTIFIER CODE | | V - VICTIM | R - REPORTING PERSON | SP - SPOUSE | D - OTHER (SPECIFY) – FIRE (PARAMEDICS) |
| | | W - WITNESS | PN - PERSON NOTIFIED | G - GUARDIAN | |

| CODE | NAME (LAST, FIRST, MIDDLE) | SEX | RACE | DATE OF BIRTH | ADDRESS - INCLUDE RANDOM CHECKS FOR WITNESSES | PHONE NUMBER(S) |
|---|---|---|---|---|---|---|
| O₁ | BERTA, DAN | M | W | – | 125 HOUBOLT JOLIET #7 | HOME / BUS / CELL |
| O₂ | FURLAN, JOHN | M | W | – | 125 HOUBOLT JOLIET #7 | HOME / BUS / CELL |
| | | | | | | HOME / BUS / CELL |

| 27. SUSPECT OR MISSING PERSON DESCRIPTION | | | | | | | HAIR | | | SKIN TONE | NAME/DOB/CLOTHING/DISTINGUISHING MARKS/ADDRESS/PLACE EMPLOYED/PHONE NUMBER/ASSOCIATES/HANG OUTS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| NO. | S/M | SEX | RACE | AGE | HEIGHT | WEIGHT | BUILD | COLOR | STYLE | EYES | |
| 1 | S | M | B | 36 | 5'10 | 195 | MED | BLK | SHT | BRO | DEX CHAPMAN, ROBERT J 03/31/68 "AKA" 61 EAST CASS ST. JOLIET |

| 28. VEHICLE - SUSPECT ☐ | STOLEN ☐ | RECOVERED ☐ | TOWED ☐ | VICTIM ☐ | OTHER ☐ |
|---|---|---|---|---|---|

| COLOR | YEAR | MAKE | BODY STYLE | MODEL | LICENSE NO. | YEAR | STATE |
|---|---|---|---|---|---|---|---|
| | | | N/A | | | | |

| V. I.N. / OTHER DISTINGUISHING MARKS | VALUE (IF STOLEN) | TOWED BY | IF TOWED HOLD YES ☐ NO ☐ | 29. L.E.A.D.S. NUMBER |
|---|---|---|---|---|
| | | TOWED TO | | |

| 30. EVIDENCE # | 31. LOCKER # | 32. EVIDENCE OFFICER NAME - STAR # |
|---|---|---|
| SEE EVID TECH | N/A | EVID. TECH. DUBS |

| 33. M.O. - WEAPON / TOOL USED - METHOD OF ENTRY | 34. RELATED REPORT # (S) |
|---|---|
| KNIFE | N/A |

## 35. PROPERTY AND NARRATIVE

| QTY. | TYPE OF PROPERTY | MANUFACTURER | COLOR | MODEL NO. | SERIAL NO. | VALUE STOLEN | VALUE REC. | VALUE DEST. |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

R/O RESPONDED TO ABOVE ADDRESS REFERENCE A DOMESTIC DISTURBANCE. R/O WHILE ENRUTE WAS REQUESTED TO EXPEDITE BY JFD PARAMEDICS. UPON ARRIVAL R/O OBSERVED ▓▓▓▓ LYING IN THE HALLWAY AT THE FOOT OF THE STAIRWAY. R/O STAPLETON #283 FIRST ON SCENE, WAS INFORMED BY JFD PARAMEDICS BERTA AND FURLAN THAT ▓▓▓▓ WAS DECEASED BY MULTIPLE KNIFE WOUNDS. R/O's OBSERVED ▓▓▓▓ WITH BLOOD STAINED CLOTHING AND A BLOOD TRAIL FROM APARTMENT #1. R/O RODRIGUEZ #147 RESPONDED TO THE AREA OF INWOOD SKATING RINK, WHERE THE ▓▓▓▓ WAS LOCATED. (SEE RODRIGUEZ #147 FOLLOW UP FOR FURTHER)

I hereby declare that the above information is true to the best of my knowledge, and if found to be not true, I am subject to arrest and prosecution for the filing of a false police report.

Signature:

| 36. CASE STATUS (MORE THAN ONE BOX MAY APPLY) | ☐ CLEARED BY ARREST | ☐ ADMINISTRATIVELY CLOSED | ☐ UNFOUNDED | ☒ REFER TO OTHER ELEMENT OF DEPARTMENT |
|---|---|---|---|---|
| | ☐ EXCEPTIONAL CLEARANCE | ☐ TO SEE COMPLAINT OFFICER | ☐ CONTINUE PRELIMINARY INVESTIGATION | ☐ REFER TO OTHER AGENCY |

INV.

| 37. OFFICERS ASSIGNED AND OFFICERS AT SCENE - STAR # | 38. SIGNATURE OF REPORTING OFFICER - STAR # | 39. SUPERVISOR AT SCENE |
|---|---|---|
| CLEARED 308 242, 172, 147 STAPLETON 283 | 308 | LT. PROVENZALE #25 SGT. HERRERA #42 |

| 40. COPY OF REPORT TO: | 41. FIELD SUPERVISOR | 42. DUTY SUPERVISOR | 43. CONTINUATION USED ☒ YES ☐ NO |
|---|---|---|---|
| | Sgt. Russ #71 | | |

809

| JOLIET, ILLINOIS POLICE DEPARTMENT | CONT__UATION/FOLLOW-UP REPORT | | PG. # | 1. REPORT NUMBER |
|---|---|---|---|---|
| | ☒ ← CHECK ONE → ☐ | | 1 | 05022200 4048 |

| 2. IF FOLLOW-UP DATE OF THIS REPORT | DATE OF ORIGINAL REPORT | 3. OFFENSE AS VERIFIED | 4. OFFENSE AFTER INVESTIGATION | 5. CODE |
|---|---|---|---|---|
| N/A | 02/22/05 | First Degree Murder | | |

| 6. VICTIMS NAME | 7. LOCATION OF OFFENSE | 8. RELATED REPORT NUMBER(S) |
|---|---|---|
| ████████████ | 120 TWIN OAKS #1  JOLIET | N/A |

**9. NARRATIVE – DO NOT REPEAT RESULTS OF PRELIMINARY INVESTIGATION. LIST ADDITIONAL PERSONS OR PROPERTY USING FORMAT OF BOXES 27, 28, OR 48.**

OFC. OLSON #292 TOOK OVER CRIME SCENE LOG FROM R/O CLEAVES 308. OFC. STAPLETON #283 FIRST ON SCENE SEE HIS FOLLOW-UP FOR FURTHER. EVID. TECH UNIT ALREADY ON SCENE SEE THEIR FOLLOW-UP. SCENE TURNED OVER TO INVESTIGATIONS.

**10. CASE STATUS OF FOLLOW-UP REPORTS**

☐ CLEARED BY ARREST   ☐ WARRANT ISSUED   ☐ ADMINISTRATIVELY CLOSED   ☒ REFER TO OTHER AGENCY
☐ EXCEPTIONAL CLEARANCE   ☐ UNFOUNDED   ☒ CONTINUE INVESTIGATION BY   INV.

| 11. OFFICER ASSIGNED 292, 172, 19 STAR #  Jes 308 STAPLETON 283 | 12. SIGNATURE OF REPORTING OFFICER  308 | 13. SUPERVISOR AT SCENE  LT. ___ #25  SGT. HEAVENER #42 |
|---|---|---|
| ___ OF REPORT TO | 15. FIELD SUPERVISOR | 16. DUTY SUPERVISOR |
| | | C000495 |

8/19

Exhibit B

Pastor Ware Testimony

```
 1      IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT

 2                    WILL COUNTY, ILLINOIS

 3

 4

 5

 6

 7          I, Patricia A. Stirniman, an Official Court

 8    Reporter for the Circuit Court of Will County, Illinois,

 9    Twelfth Judicial Circuit of Illinois, License No.

10    84-1798, do hereby certify that I reported in shorthand

11    the proceedings had in the above-entitled cause; that I

12    thereafter caused the foregoing to be transcribed into

13    typewriting, which I hereby certify to be a true and

14    accurate transcript of the proceedings had before the

15    Honorable DANIEL J. ROZAK, Judge of said court.

16

17                            _____

18                            Official Court Reporter

19

20

21

22

23    Dated this 2nd day of

24    November, 2007.
```

1 2004, did you become aware that Cassandra Frazier's

2 apartment had burned down?

3     A.   Yes, I was there.

4     Q.   And did you physically see the apartment?

5     A.   Yes, I did.

6     Q.   And was that in the morning or in the

7 afternoon?

8     A.   It was around noon -- it was in the morning

9 hours around -- it was morning time. I went over there

10 about 10:00, 11:00 o'clock, something like that.

11     Q.   And did you go into the apartment?

12     A.   Yes, I did.

13     Q.   Did you see that the apartment was burned?

14     A.   Yes, I did.

15     Q.   And, in particular, what did you notice?

16     A.   We looked at the way it was burned, and we seen

17 it probably started in her bedroom.

18     Q.   And did you see clothes that appeared to be

19 piled on the bed?

20     A.   Yes. Clothes was piled on the bed.

21     Q.   And those were charred?

22     A.   Yes.

23     Q.   Later on, or after the fire, did you again have

24 an opportunity to see the defendant?

000185

0000185

A. Yes, I did.

Q. And where was that at?

A. He was walking down the street, going in the ballpark, and I pulled up next to him. And I was really angry. And I asked him why did he do that, why did he set that girl's house on fire like that. And he was -- he was kind of just, you know, like really upset. And he just said -- you know, he told me, he said that's what he did. And he just took off. He just took off and left and ran down the street.

Q. Make sure you keep your voice up. I am sorry, just so everybody, of course, can hear you.

After he took off -- so, at that point in time, did he indicate to you that he burned the house down?

A. Yes. He told me he did.

Q. And you said that he took off running?

A. He left, because he thought I was going to get in a fight with him.

Q. Later that day, did you receive a call from someone that you recognized as Robert Chapman?

A. Yes.

Q. And did -- was it Robert Chapman?

A. It was Robert.

Q. Did he ask you to meet somewhere?

000186

0000186

1    A.    Yes, he did.

2    Q.    And did you meet with him?

3    A.    Yes, I did.

4    Q.    And did you have a further conversation or did

5    he ask you to take -- take him somewhere?

6    A.    Yes.  I took him to the hospital.

7    Q.    And was that for some kind of a stomach

8    problem?

9    A.    Yes.

10    Q.    And did you take him to the hospital?

11    A.    Yes, I did.

12    Q.    And did you sit with him in the emergency room,

13    the lobby area?

14    A.    Yes, I did.

15    Q.    While you were in that area, did you further

16    discuss with Mr. Chapman the incident surrounding the

17    arson?

18    A.    Yes, I did.

19    Q.    And what did he say to you?

20    A.    He said he was just angry that she would want

21    to do anything and wanted -- make anything -- anything

22    that was more important to her than him.  That he wanted

23    to show her how he felt about it.  He was really upset

24    about that.  He felt that she would pay more attention

000187

0000187

1    to other things maybe, or children, or the church or

2    anything else, anything that was more important than

3    him, and he didn't like that. He didn't like that at

4    all.

5        Q.  Did he make any -- did he admit to you at that

6    time that he burned the house down?

7        A.  Yes, he did.

8        Q.  And this was an apartment that was on 12 North

9    Cagwin?

10       A.  Yes.

11       Q.  Did he start to tell you how he did it?

12       A.  He told me how he did it. He told me -- I

13   asked him how did he get in the house, how did he do it.

14   He said he broke in the house. I think he think said he

15   went up in the back window of the house, and he took the

16   clothes, all her clothes, threw them on the bed and lit

17   the bed up -- lit the fire on the bed.

18       Q.  And was that consistent with what you had seen

19   while you were actually at the house?

20       A.  Yes.

21       Q.  Did he make any statements to you regarding how

22   he wanted Cassandra to feel?

23       A.  He was angry at her. He wanted her to see how

24   it was -- he felt -- he felt that she put too much value

000188

38

000018

1  in stuff and not enough on their relationship, and he

2  wanted her to see how it felt to not have anything.

3  Because I assumed that when they got into their

4  arguments, she would tell him --

5       Q.  Without assuming anything.

6       A.  Okay.  When they got into their arguments, she

7  would tell him that that was her house, and if he didn't

8  like it, he had to go.  And he didn't like that.  He

9  said he didn't like it, telling him he had to go.  By

10  burning the house was letting her see that, you know,

11  that he didn't -- he didn't appreciate her telling him

12  that he had to get out.  And so, that's why he did it.

13         MR. LONG:  Nothing further.

14         THE COURT:  Cross?

15         MR. JAQUAYS:  Thank you, Judge.

16              CROSS EXAMINATION

17              BY

18              MR. JAQUAYS:

19       Q.  Good morning, Pastor.

20            You indicated that my client and Ms. Frazier

21  had a violent or a tumultuous relationship?

22       A.  Yes.

23       Q.  And it had gone on for a long period of time,

24  had it not?

000189

39

Exhibit C

Police Investigation Report

6/28/13
Police
due: 7/8/13

## FOIA REQUEST

**\*\*Note to Requester: Retain a copy of this request for your files. If you eventually need to file a Request for Review with the Public Access Counselor, you will need to submit a copy of your FOIA request.\*\***

Name and Address of Public Body Receiving Request: _City of Joliet - City Clerk Off_

_150 W. Jefferson St. Joliet, Illinois 60432_

**Received**

Date Requested: _6-24-13_

JUN 28 2013

Request Submitted By: ___ E-mail  _✓_ U.S. Mail ___ Fax ___ In Person

**Joliet Police Records**

Name of Requester: _Robert Chapman #B78512      MCC_

Street Address: _P.O. Box 1000_

City/State/County Zip (required): _Menard, Illinois 62259_

Telephone (Optional): _____ E-mail (Optional): _____

Fax (Optional): _____

Records Requested: *Provide as much specific detail as possible so the public body can identify the information that you are seeking. You may attach additional pages, if necessary.*

_All documents concern the investigation of me (Robert J Chapman) for an Allege Arson on November 2004, plus Witness Statement, investigation report, Fire Department Report_

Do you want copies of the documents? _YES_ or NO
   =-Do you want Electronic Copies or Paper Copies? _Paper Copies_
   --If you want Electronic Copies, in what format? _____

Is this request for a Commercial Purpose? YES or _NO_
*(It is a violation of the Freedom of Information Act for a person to knowingly obtain a public record for a commercial purpose without disclosing that it is for a commercial purpose, if requested to do so by the public body. 5 ILCS 140.3.1(c)).*

Are you requesting a fee waiver? _YES_ or NO
*(If you are requesting that the public body waive any fees for copying the documents, you must attach a statement of the purpose of the request, and whether the principal purpose of the request is to access or disseminate information regarding the health, safety and welfare or legal rights of the general public. 5 ILCS 140/6(c)).*

I (Robert J. Chapman) would like to obtain copies of these records, I understand that the Act permits a public body to charge a reasonable coping fee, not to exceed the actual cost of reproduction, and not including any cost to search or review the records (5 ILCS 140/6), however, I request a waiver of fees for this request because I am of the requested informati to me is in the public interest because it is likely to contribute significantly to public understanding of the operation or activities of the Joliet Police department, the health, safety and welfare

04 - 25841
04 - 25499
04 - 25722

STATE OF ILLINOIS)
                 )SS
COUNTY OF WILL  )

# IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## WILL COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS

# POOR PERSON

VS

05 CF 391

ROBERT CHAPMAN

CASE NO:_____

Joliet Police Department
150 W. Jefferson St.
Joliet, IL 60432

# SUBPOENA

TO:

YOU ARE COMMANDED to appear to testify before the Honorable **Judge Rozak**

in Courtroom **404** at **Will County Courthouse, 14 W. Jefferson, Joliet** , Illinois,

(Insert name of building, address, city)

on **August 2, 2005** , 20____, at **9:30 a.m.** (a.m.) (p.m.)

YOU ARE COMMANDED ALSO to bring the following: Any and all reports between February 1, 2004 and
February 21, 2005 involving domestic disputes between Cassandra Frazier and Robert Chapman both of 120 Twin
Oaks Drive, Joliet, IL (There is no need at this point to include reports related to events occurring on February 22, 2005
which involved the death of Cassandra Frazier.)
in your possession or control.

YOUR FAILURE TO APPEAR IN RESPONSE TO THIS SUBPOENA WILL SUBJECT YOU TO PUNISHMENT FOR
CONTEMPT OF THIS COURT.

In lieu of an appearance, you may mail the requested          June 28, 2005
records/documents to the address below before 8/2/05.
                                                    Witness,_____, 20____

(Seal of Court)

_Pamela J. McGuire_

PAMELA J. McGUIRE
Clerk of the Circuit Court

BY:_____
                (Deputy)

I served the subpoena by handing a copy to_____

on _____, 20____ I paid the witness $_____ for witness and mileage fees.

Signed and sworn to before me

_____, 20____

RECEIVED
JUL 05 2005
JOLIET POLICE RECORDS

_____
(Notary Public)

(Plaintiff's attorney or plaintiff if he is not represented by an attorney)

NAME:              Assistant Public Defender
ATTORNEY FOR:  Robert Chapman, Defendant
ARDC#:              58 E. Clinton Street, Suite 210
ADDRESS:          Joliet, IL 60432
CITY:
TELEPHONE:      (815) 727-8666

Court - Original          Receiving Party - Copy          **14A-3** (Revised 03/01) 2 Part Form

7/12/05
<57

## For Public Defender's Office Use Only

| 2. IF FOLLOW-UP DATE OF THIS REPORT | DATE OF ORIGINAL REPORT | 3. OFFENSE AS VERIFIED | 4. OFFENSE AFTER INVESTIGATION | 5. CODE |
|---|---|---|---|---|
| 01/24/05 | 11/02/04 | AGG ARSON | N/A | N/A |

| 6. VICTIMS NAME | 7. LOCATION OF OFFENSE | 8. RELATED REPORT NUMBER(S) |
|---|---|---|
| FRAZIER, CASSANDRA | 12 N. CAGWIN | 04-11030258?? |

**9. NARRATIVE – DO NOT REPEAT RESULTS OF PRELIMINARY INVESTIGATION. LIST ADDITIONAL PERSONS OR PROPERTY USING FORMAT OF BOXES 27, 28, OR 48.**

DETECTIVE R. RAASCH #119 ON 01/24/05 @ 0920 HRS:

Critical information:

THIS CASE WILL BE CLEARED EXCEPTIONALLY AS OF THIS DATE

Narrative:

This case was reviewed by ASA Greg DeBord and the only evidence that we had was a confession by the suspect that being Robert James Chapman to his priest, Pastor Herman D. Ware. ASA Greg DeBord advised us that it is his opinion that this confession is not admissible and Mr. Chapman can not be charged at this time.

Case will be exceptionally cleared as of this date. . . ~RR#119

M. aguirre on 1/24/05 @ 10:44 hrs.

**10. CASE STATUS OF FOLLOW-UP REPORTS**

☐ CLEARED BY ARREST    ☐ WARRANT ISSUED    ☐ ADMINISTRATIVELY CLOSED      ☐ REFER TO OTHER AGENCY

☒ EXCEPTIONAL CLEARANCE    ☐ UNFOUNDED    ☐ CONTINUE INVESTIGATION BY

| 11. OFFICER ASSIGNED | STAR # | 12. SIGNATURE OF REPORTING OFFICER | 13. SUPERVISOR AT SCENE |
|---|---|---|---|
| R Raasch | 119 | #119 | N/A |
| 14. COPY OF REPORT TO | | 15. FIELD SUPERVISOR | 16. DUTY SUPERVISOR |
| N/A | | | |

| 2. IF FOLLOW-UP DATE OF THIS REPORT NOVEMBER 8, 2004 | DATE OF ORIGINAL REPORT NOVEMBER 2, 2004 | 3. OFFENSE AS VERIFIED ABD ARSON | 4. OFFENSE AFTER INVESTIGATION N/A | 5. CODE 7829 |
| 6. VICTIMS NAME FRAZIER, CASSANDRA | 7. LOCATION OF OFFENSE 12 N CROWIN, JOLIET, IL | 8. RELATED D.T. (S) N/A | | |

**9. NARRATIVE – DO NOT REPEAT RESULTS OF PRELIMINARY INVESTIGATION. LIST ADDITIONAL PERSONS OR PROPERTY USING FORMAT OF BOXES 27, 28, OR 48.**

ENTERED INTO EVIDENCE THIS DATE

( 1 ) MASTER CASSETTE RECORDING(S) OF TELEPHONE AND/OR RADIO

COMMUNICATIONS RECEIVED IN THE COMMUNICATIONS CENTER ON _____

NOVEMBER 2, 2004          PERTAINING TO THIS INVESTIGATION.

TAPE REQUESTED BY: INVESTIGATOR RAASCH #119 _____

RECEIVED INTO EVIDENCE BY: LOCKER # 20 _____

EVIDENCE NUMBER: 04-2561

ITEM NUMBER: 5

BY: Zelda Scott 819 _____

**10. CASE STATUS OF FOLLOW-UP REPORTS**

☐ CLEARED BY ARREST ☐ WARRANT ISSUED
☐ EXCEPTIONAL CLEARANCE ☐ UNFOUNDED
☐ ADMINISTRATIVELY CLOSED
☐ CONTINUE INVESTIGATION BY
☐ REFER TO OTHER AGENCY

| 11. OFFICER ASSIGNED ZELDA SCOTT | STAR # 819 | 12. SIGNATURE OF REPORTING OFFICER Zelda Scott #819 | 13. SUPERVISOR AT SCENE Zelda Scott 819 |
| 14. COPY OF REPORT TO | | 15. FIELD SUPERVISOR | 16. DUTY SUPERVISOR |

| 2. IF FOLLOW-UP DATE OF THIS REPORT | DATE OF ORIGINAL REPORT | 3. OFFENSE AS VERIFIED | 4. OFFENSE AFTER INVESTIGATION | 5. CODE |
|---|---|---|---|---|
| 11/04/04 | 11/02/04 | AGG ARSON | N/A | N/A |

| 6. VICTIMS NAME | 7. LOCATION OF OFFENSE | 8. RELATED D.T. (S) |
|---|---|---|
| FRASIER, CASSANDRA | 12 N. CAGWIN, UPSTAIRS | N/A |

**9. NARRATIVE – DO NOT REPEAT RESULTS OF PRELIMINARY INVESTIGATION. LIST ADDITIONAL PERSONS OR PROPERTY USING FORMAT OF BOXES 27, 28, OR 48.**

### DETECTIVE R. RAASCH #119 ON 11/04/04 @ 1330 HRS:

Critical information:

Investigation to continue.

Narrative:

I was called to Silver Cross Hospital at approx. 4:30 p.m. on 11/02/04. Uniform Officers were there stating that Robert Chapman wanted to turn himself in for an earlier incident. Det. Allbert and I did go into the hospital and I asked Robert Chapman why he wanted to turn himself in and he stated, "You know what, for, what my pastor and ex-girlfriend are telling you guys". I advised Mr. Chapman I would need to read him his Constitutional Rights before I could speak to him and he stated he understood that.

While reading him his Constitutional Rights Mr. Chapman stated that he wanted to know what he was being charged with. I told him at this time I had no warrant and no charges pending against him. I asked him what exactly did his pastor and girlfriend tell him and he stated that this was reference to an arson. I then read him his Constitutional Rights. He stated he did understand his rights and he first stated he did not want to talk to us. As we began to leave he said yes he did want to talk to us. When asked to sign the rights form he signed the form but

**10. CASE STATUS OF FOLLOW-UP REPORTS**

☐ CLEARED BY ARREST    ☐ WARRANT ISSUED    ☐ ADMINISTRATIVELY CLOSED    ☐ REFER TO OTHER AGENCY

☐ EXCEPTIONAL CLEARANCE    ☐ UNFOUNDED    ☒ CONTINUE INVESTIGATION BY 119

| 11. OFFICER ASSIGNED | STAR # | 12. SIGNATURE OF REPORTING OFFICER | 13. SUPERVISOR AT SCENE |
|---|---|---|---|
| Raasch | 119 | #119 | |
| 14. COPY OF REPORT TO | | 15. FIELD SUPERVISOR | 16. DUTY SUPERVISOR |
| | | 65 | |

| 2. IF FOLLOW-UP DATE OF THIS REPORT | DATE OF ORIGINAL REPORT | 3. OFFENSE AS VERIFIED | 4. OFFENSE AFTER INVESTIGATION | 5. CODE |
| 11/04/04 | 11/02/04 | AGG ARSON | N/A | N/A |

| 6. VICTIMS NAME | 7. LOCATION OF OFFENSE | 8. RELATED D.T. (S) |
| FRASIER, CASSANDRA | 12 N. CAGWIN, UPSTAIRS | N/A |

**9. NARRATIVE – DO NOT REPEAT RESULTS OF PRELIMINARY INVESTIGATION. LIST ADDITIONAL PERSONS OR PROPERTY USING FORMAT OF BOXES 27, 28, OR 48.**

stated he did not want to talk to us without an attorney. I then wrote each one of these answers down, being no, yes, no and Mr. Chapman initialed the last no as he stated he wanted to speak to an attorney. No further conversation occurred between me and Mr. Chapman.

End of Report.. RR #119

wilcoxen #837 on 11/04/04 @ 1402 hrs.

**10. CASE STATUS OF FOLLOW-UP REPORTS**

☐ CLEARED BY ARREST    ☐ WARRANT ISSUED    ☐ ADMINISTRATIVELY CLOSED    ☐ REFER TO OTHER AGENCY
☐ EXCEPTIONAL CLEARANCE    ☐ UNFOUNDED    ☒ CONTINUE INVESTIGATION BY 119

| 11. OFFICER ASSIGNED | STAR # | 12. SIGNATURE OF REPORTING OFFICER | 13. SUPERVISOR AT SCENE |
| R. Rausch | 119 | R. R #119 | |
| 14. COPY OF REPORT TO | N/A | 15. FIELD SUPERVISOR | 16. DUTY SUPERVISOR |

Exhibit D

Arrest Report of Cassandra Frazier
State Attorney letter stating
their was no report



# JAMES W. GLASGOW

STATE'S ATTORNEY OF WILL COUNTY

Will County Court Annex

57 North Ottawa Street 6th Floor, Joliet, Illinois 60432

815-727-8453

November 16, 2012

Mr. Robert Chapman
Menard Correctional Center
#B78512
PO Box 1000
Menard, Illinois 62259

Re: FOIA request received October 22, 2012

Dear Mr. Chapman:

This is in response to your request under the Freedom of Information Act (5 ILCS 140) for the following documents related to your conviction in case # 05 CF 391. in which you were charged with First Degree Murder:

- Discovery
- Laboratory reports
- Forensic reports
- Photographs
- Arrest reports of the victim, Cassandra Frazier

Your request is denied for the following reasons.

- The Will County State's Attorney's Office is established as a judicial office pursuant to Article VI of the Illinois State Constitution. (The JUDICIARY, § 19. State's attorneys – Selection, salary.) As a judicial office, the State's Attorney's Office is not subject to the Freedom of Information Act. *See Copley Press. Inc. v. Administrative Office of the Courts*, 648 N.E.2d 324, 327-28 (2nd Dist., 1995). ("... the legislature specifically listed the legislative and executive branches of government without listing the judicial branch. The lack of any reference to the courts or judiciary must be taken as an intent to exclude the judiciary from the disclosure requirements of the Act.")

- Discovery materials, laboratory reports and forensic reports are work product and, as such, are specifically exempted under Section 7, subparagraph (f).

- State or federal laws and rules, or regulations implementing such laws and rules, also prohibit the dissemination of discovery materials. *See* IL. S. Ct. R. 415(c). Thus, disclosure of these items is exempted under Section 7(1)(a).

- Discovery materials, laboratory reports, forensic reports and photographs are exhibits and evidence and neither "exhibit" nor "evidence" is included in the definition of a public record under Section 2, subparagraph (c). The Act requires the disclosure of public records only.

- Photographs of persons, both deceased and alive, include private and personal information including biometric identifiers which are specifically exempted from disclosure under Section 7, subparagraph (b) and (c).

- Photographs of the deceased contain personal information exempt from disclosure under Section 7(c). In <u>National Archives and Records Administration v. Favish</u> 124 S. Ct. 1570 (2003) The Supreme Court of the United States found that the privacy interest of the family of the deceased outweighed the public interest in disclosure of death-scene photographs taken by police investigators.

- We have no arrest records of Cassandra Frazier.

Please be advised that you have a right to have the denial of your request reviewed by the Illinois Attorney General Public Access Counselor, Cara Smith. She can be contacted at (312) 814-5526 or at the Office of the Attorney General, 500 S. Second Street, Springfield, Illinois 62706. You also have the right to judicial review of the denial of your request under Section 11 of the Freedom of Information Act.

If you choose to file a Request for Review with the PAC, you must do so within 60 calendar days of the date of this denial letter. 5 ILCS 140/9.5(a). Please note that you must include a copy of your original FOIA request and this denial letter when filing a Request for Review with the PAC.

If you have any questions or concerns, please contact me at (815) 727-8936.

Sincerely,

Marie Q. Czech
Marie Q. Czech
Assistant State's Attorney



# PAUL J. KAUPAS
## *WILL COUNTY SHERIFF*

Will County Courthouse
14 W. Jefferson Street
Joliet, Illinois   60432

Telephone: 815/727-8895
Fax: 815/727-8565
*Website: www.willcosheriff.org*

May 28, 2013

Mr. Robert J. Chapman #B78512
Menard Correctional Center
P.O. Box 1000
Menard, Illinois  62259

RE:  Freedom of Information Act Request

Mr. Chapman:

Please find enclosed a copy of the WCADF inmate file of Cassandra Frazier from an arrest in May of 2003.  These records are being forwarded to you based on your Freedom of Information Act Request dated May 12, 2013.

At this time I would like to thank you for your FOIA submission, and wish to relay that your request is now considered satisfied in the files of the WCADF.

Sincerely,

MARY FRAN NIEMANN
W.C.A.D.F. Inmate Records Supervisor
W.C.A.D.F. FOIA Officer
95 South Chicago Street
Joliet, Illinois  60432
mniemann@willcosheriff.org

MFN/mfn

Enclosures

Cc:    File

B-2

Form #90

# WILL COUNTY SHERIFF'S OFFICE
## DOMESTIC VIOLENCE VICTIM NOTIFICATION FORM

### Please type or print legibly

FOLLOWING INFORMATION IS TO BE COMPLETED BY ARRESTING AGENCY

ARRESTING AGENCY _____Joliet_____

ARRESTING AGENCY TELEPHONE # ___72-3100___ FAX # ___724 3260___

DATE/TIME OF ARREST___5/4/03___ CASE # __030504010488__

OFFENDER NAME___Cassandra Frazier___

OFFENDER DOB___1/23/62___

VICTIM NAME___Robert Chapman___

VICTIM ADDRESS___2219½ W Jefferson #141 Joliet___

ALTERNATE ADDRESS VICTIM CAN BE REACHED AT _____

VICTIM HOME PHONE NUMBER_____ WORK _____

ALTERNATE NUMBER VICTIM CAN BE REACHED AT _____
*******************************************************************
FOLLOWING INFORMATION WILL BE COMPLETED BY ADULT DETENTION FACILITY PERSONNEL

OFFENDER C.I.M.I.S. NUMBER __033240__

**NOTIFICATION ATTEMPTS:**

1) DATE/TIME __5-5-03  4:55 m.__ BY __P.O'Connell__

2) DATE/TIME_____ BY_____

VICTIM CONTACTED? (CIRCLE ONE)        YES     (NO)

RELEASE TIME/DATE __5-5-03  7:00 P.m.__ BY: __P.O'Connell__

ARRESTING AGENCY NOTIFIED? (CIRCLE ONE)   (YES)    NO

AGENCY NOTIFIED BY:    (CIRCLE ONE)    TELEPHONE    (FAX)

DATE/TIME __5-5-03  4:55 PM__ BY __P.O'Connell__

IF NOTIFIED BY TELEPHONE, NAME AND BADGE NUMBER OF OFFICER NOTIFIED:

_____     _____
OFFICER'S NAME              BADGE NUMBER

Exhibit E

Statement in Appellate Finley Brief
that Judge heard recorded Statement
of Ware and Chapman

Affidavit of Chapman

No. 3-13-0134

IN THE

APPELLATE COURT OF ILLINOIS

THIRD JUDICIAL DISTRICT

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court |
| | ) | of the Twelfth Judicial |
| Respondent-Appellee, | ) | Circuit, Will County, Illinois |
| | ) | |
| -vs- | ) | |
| | ) | 05-CF-391 |
| | ) | |
| **ROBERT J. CHAPMAN,** | ) | |
| | ) | Honorable |
| Petitioner-Appellant. | ) | Daniel J. Rozak, |
| | ) | Judge Presiding. |

## MOTION FOR LEAVE TO WITHDRAW AS COUNSEL ON APPEAL PURSUANT TO *PENNSYLVANIA v. FINLEY*

## MEMORANDUM OF LAW

### I.

### STATEMENT OF FACTS

On July 26, 2007, a jury found the defendant guilty of the first degree murder of Cassandra Frazier (C214) (R521). 720 ILCS 5/9-1(a)(1) (West 2004). The defendant stabbed Frazier to death in the couple's apartment in Joliet on the evening of February 22, 2005. *People v. Chapman*, 2012 IL 111896, ¶ 3.

### Relevant trial court proceedings

Prior to trial, to show motive and intent, the State moved to allow into evidence, among other things, an admission made by the defendant to his pastor that he had set

fire to Frazier's apartment in November of 2004 (C69-73). The State argued the Clergy privilege did not apply to exclude the admission (C71).

At the hearing on the matter, the defendant's pastor, Herman Ware, testified that in November of 2004, he was approached by Detective Rick Raasch of the Joliet Police Department regarding the defendant and a fire that had occurred in Joliet (R89-91). The conversation was recorded (R91).[1] Ware told Raasch that he had taken the defendant to an emergency room that month, that he had initiated a discussion with the defendant about the fire (R95), and that the defendant had made admissions to him about the fire at the hospital (R91-93, 97). Ware asserted that the defendant's statements at the hospital were made to him as the defendant's pastor (R92-94, 98-99). Ware, however, acknowledged that he had not informed Detective Raasch of this fact when they spoke (R100), and had instead told him that he had thought it had been a friendship conversation that was not confidential (R94). The defendant did not testify at the hearing.

The court ruled that it would not exclude from evidence the defendant's statements to Ware because the Clergy privilege did not apply (R119). The judge, who listened to the recording of the interview between Ware and Detective Raasch, noted that "Pastor Ware *** did not claim a clergyman's privilege in the statement to the police. In fact, he is the one that went to the police on his own . . ." (R117). The court added that:

> "There is no indication that the defendant was ever seeking spiritual guidance or counseling. Neither the defendant nor the pastor ever indicated *** that what was said should be kept only between the

---

[1] The recording was not introduced into evidence.

two of them. In fact, the pastor characterized the conversation as more of a friend-on-friend situation.

The pastor is the one who initiated all the questions, which had absolutely nothing to do with any guidance or counseling that I could see. There were questions regarding facts, and nothing more than that.

\*\*\*

The pastor went on to say in his [trial court] testimony that [the defendant had] needed someone to talk to as his pastor. That might be true, but that there is no indication that that's, in fact, what was happening at the time.

\*\*\*

The pastor also said [at the hearing that the defendant] started the conversation by saying it was between the pastor and the parishioner, but there is no indication on the CD that that was ever the case" (R117-19).

At the subsequent trial, the evidence revealed that on the date of Frazier's death, the defendant came home from work at around 9:45 p.m., after having consumed alcohol and crack cocaine. *Chapman*, 2012 IL 111896, ¶ 4. They argued, and after the defendant went to bed, Frazier stabbed him in the leg with a knife just above his right knee (R265). *Chapman*, 2012 IL 111896, ¶ 5. It was a small cut that required four stitches (R265, 270). The defendant described the injury to the police as a "graze" (R309-10).

The defendant grabbed the knife from Frazier, cutting his hand in the process, and began stabbing Frazier while they were still in bed. *Chapman*, 2012 IL 111896, ¶ 5. The two fell onto the floor where the defendant continued to stab Frazier in her upper body and neck. *Chapman*, 2012 IL 111896, ¶ 5. Frazier told the defendant that she loved him and the defendant stopped stabbing Frazier, but left the knife sticking in her neck. *Chapman*, 2012 IL 111896, ¶ 5.

-3-

STATE OF ILLINOIS )
) SS
COUNTY OF Randolph )

## AFFIDAVIT

I, Robert Chapman being first duly sworn upon my oath depose and state that the following matters are both true and correct made upon personal knowledge and belief, and if called as a witness, I am competent to testify thereto: _____

that everytime I spoke with Pastor Ware I invoke Clergy Privilege. I have never consider Ware to be a friend. He didn't want me and Cassandra togather. He would often get me to do things with him to get me away from Cassandra. He knew of the facts that she was abusive toward me.

I never gave Pastor Ware or anyone permission to record our conversation at anytime

Subscribed and sworn to
before me on the 13 day
of March 2015

Jennifer Clendel
NOTARY PUBLIC

Respectfully submitted,

Robert Chapman



JENNIFER CLENDENIN
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
May 29, 2018

Exhibit F

Indictment

Instruction

Statement by State as to Cause of death

**STATE OF ILLINOIS**
**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT**
**WILL COUNTY, ILLINOIS**

PEOPLE OF THE STATE OF ILLINOIS     )
                                      )
              VS.                )     Case No. **2005 CF 391**
                                        )
**ROBERT CHAPMAN**               )

**BILL OF INDICTMENT**

Indictment returned by Grand Jury empaneled by the Circuit Court of the Twelfth Judicial Circuit, County of Will, State of Illinois, on February 23, 2005.

The GRAND JURORS, chosen, selected and sworn, in and for the County of Will in the State of Illinois, in the name and by the authority of the People of the State of Illinois, upon their oaths present that:

**COUNT I**

on or about **February 22, 2005**, at and within Will County, Illinois, **ROBERT CHAPMAN**, a

**male person, committed the offense of:**

**FIRST DEGREE MURDER**

in that **said defendant, without lawful justification and with the intent to kill Cassandra**

**Frazier, stabbed Cassandra Frazier about the body, thereby causing the death of**

**Cassandra Frazier**, in violation of Chapter 720, Section 5/9-1(a)(1), of the Illinois Compiled

Statutes, 2005, contrary to the Statute, and against the peace and dignity of the same People of

the State of Illinois, and

_____
      Foreman of the Grand Jury

C000009

C0000010

## COUNT II

on or about **February 22, 2005**, at and within Will County, Illinois, **ROBERT CHAPMAN**, a **male** person, committed the offense of:

## FIRST DEGREE MURDER

in that **said defendant, without lawful justification, stabbed Cassandra Frazier about the body, knowing such act created a strong probability of great bodily harm to Cassandra Frazier, thereby causing the death of Cassandra Frazier,** in violation of Chapter 720, Section 5/9-1(a)(2), of the Illinois Compiled Statutes, 2005, contrary to the Statute, and against the peace and dignity of the same People of the State of Illinois.

A TRUE BILL

_____
Foreman of the Grand Jury

C000011

C0000012

To sustain either the charge of first degree murder or the charge of second degree murder, the State must prove the following propositions:

*First Proposition:* That the defendant performed the acts which caused the death of Cassandra Frazier; and

*Second Proposition:* That when the defendant did so,

he intended to kill or do great bodily harm to Cassandra Frazier;

or

he knew that such acts created a strong probability of death or great bodily harm to Cassandra Frazier;

and

*Third Proposition:* That the defendant was not justified in using the force which he used.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, your deliberations should end, and you should return a verdict of not guilty.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, then you should go on with your deliberations to decide whether a mitigating factor has been proved so that the defendant is guilty of the lesser offense of second degree murder instead of first degree murder.

You may not consider whether the defendant is guilty of the lesser offense of second degree murder until and unless you have first determined that the State has proved beyond a reasonable doubt each of the previously stated propositions.

The defendant has the burden of proving by a preponderance of the evidence that a mitigating

C000238

C0000239

1  stabbed her.

2        We are not, again, talking about whether or not

3  he took money from her purse and ran out and got a taxi.

4  We are trying to determine --

5        MR. LONG:  Objection, your Honor.

6        THE COURT:  Take the jurors out for just a

7  moment.

8        THE BAILIFF:  All rise.

9             (WHEREUPON, jury exited the courtroom.)

10       You may be seated.  The jurors are all out of

11  the courtroom.

12       What is the objection?

13       MR. LONG:  The objection is to the reading of

14  the indictment.  It's not evidence.  The jury

15  instructions are -- instruct the jurors on what the law

16  is.  And the law -- he is trying to establish that they

17  are not to look at the pushing as -- the way the

18  defendant is charged is that he caused her death -- let

19  me try to articulate this.

20       In performing the acts that caused her

21  death -- defendant performed the acts that caused her

22  death is the way that the statute -- as the jury

23  instruction reads.  And the evidence is that he

24  performed those acts.  The way the defendant is

**000459**

50

0000459

1 notified, in terms of what direction we are going for

2 double jeopardy and to be prepared for his defense, is

3 that it's the stabbing. But the actions after also are

4 tied into whether or not he performed those -- the acts

5 that caused her death, because the pushing and the

6 preventing her from leaving does tie into that. It's

7 included in part of the actions that he took in stabbing

8 her, just as if he held her down.

9 So, for him to start arguing and reading the

10 indictment that it's the stabbing that matters, I think

11 that's not a correct way to phrase it to the jury.

12 MR. JAQUAYS: It's exactly the way to phrase it

13 to the jury, Judge. That's the issue before the court --

14 or before the jury. He is charged with not just

15 unilaterally or -- as a -- how to say to you, as a broad

16 scope, causing the death of not getting her treatment,

17 or whatever else. He is caused (sic) with causing her

18 death, knowingly and intentionally, two different

19 counts, by stabbing her. That's what we are talking

20 about, at the time he was stabbing her. That's when the

21 intense passion took place, at the time he was stabbing

22 her. That's what we have to talk about.

23 Now, they can argue that all these other things

24 show what his intention was at the time of the stabbing,

**000460**

51

1  but it's the stabbing that we are talking about.

2      MR. LONG:  The stabbing led to the bleeding in

3  her neck, which was her cause of death.  They are on

4  notice that that's what we are -- that that's what we

5  are shooting for.

6      What the jury has -- it's not about the

7  stabbing.  It's about whether his acts caused her death.

8  And the acts that he did -- even after she was stabbed

9  and still alive, definitely contribute to whether or not

10  he caused her death.  It's not about us having to prove

11  that -- it's not just about the stabbing.  That's just

12  the -- what led to her ultimate death, but it's not

13  necessarily -- I think it's misleading the jury, in

14  terms of what they can find.

15      THE COURT:  Before we go any farther, I want

16  the court reporter to read back Mr. Jaquays' last

17  comments.

18      Can you find them?

19          (WHEREUPON, record was read back as

20          requested.)

21      Well, Mr. Jaquays did get away from the

22  indictment with the last comments.  It wasn't what the

23  indictment alleges, it's what we are talking about, is

24  the way you phrased it.  And he is saying his position

**000461**

52

0000461

1   would be he is not dealing with what happened later.

2        I don't know exactly where you were going to go

3   with that, but, I mean, clearly, I would think the

4   pushing her back in and trying to find money to get out

5   of there relates back to the intent of what he wanted to

6   do at the time she was stabbed.

7        I think I am going -- well, any further

8   argument?

9        MR. JAQUAYS: Judge, what I am saying is, just

10  so I am clear on this, is that the issue before -- as I

11  see it before the jury is, his actions in the stabbing.

12  That's where -- that's where his sudden and intense

13  passion is going to be directed at, what occurred during

14  those brief -- when I said 30 to -- a minute to

15  30 seconds, what happened then.

16       The fact that he -- the fact that he grabbed

17  the purse or he ran out the door, certainly, they can

18  argue, and they will argue it showed his intent back

19  then.  But the sudden and intense passion has to do with

20  the stabbing.  We are not saying if they prove that he

21  took the purse, then he didn't have sudden and intense

22  passion, and therefore, it has to be murder.  That's

23  what we are saying that's not the case.  The sudden and

24  intense passion has to do with the stabbing.

000462

0000462

1    MR. LONG: That's what he is arguing.

2    My position is that it misleads the jury to

3 believe that, because the indictment reads that it's the

4 stabbing that they have to look at, and nothing else,

5 that I think that misleads them. That he performed the

6 acts that caused her death. The stabbing is notice to

7 them, in terms of where we are going. It's the whole

8 course of actions that he took that day that determined

9 whether or not -- and it wasn't over after he stabbed

10 her. He stabbed her, and then he did stuff to her

11 after.

12    So, the fact that he is preventing her from

13 leaving, it's not just about the stabbing. And I think

14 the impression to the jury is, by reading the indictment

15 states "stabbing," leads them to believe that it's only

16 by the stabbing, and it isn't. That he couldn't have

17 committed first degree murder because -- with the push,

18 because we have to look at the stabbing.

19    And my problem was that I don't agree with that

20 reading, because, I think, in looking at whether he

21 performed the acts that caused her death, they

22 definitely have to look at what he did after he stabbed

23 her, because the stabbing -- the knife is still in her

24 neck. She is bleeding out. She is not dead. It's just

**000463**

54

0000463

1    one of the actions that he caused in causing her death.

2              And so, the impression that they got, I think,

3    is wrong.

4              THE COURT:   Mr. Jaquays?

5              MR. JAQUAYS:   I think the impression I am

6    trying to give them -- the statement I am trying to give

7    them is exactly what the situation is, Judge.   Is he

8    guilty of causing her death by stabbing.   We are not --

9    he wasn't accused of causing her death by failure to do

10   medical treatment, by locking her in a room or whatever

11   else they are saying.   These all have to do with his

12   intent of what they were going to argue, show why he was

13   stabbing her; or that it was not just sudden and intense

14   passion.   I could understand that argument.

15             But to say that they want to then take it the

16   whole line, is that all they have to do is allege that

17   he is guilty of her murder because he stabbed her, and

18   then we can bring in everything else that happened that

19   night and say that's what caused it, that's not what the

20   law is.   It's not just a notice to us.   They said he is

21   guilty of murder because he stabbed her.   That's what we

22   are dealing with.

23             Now, they can use all these other facts to show

24   his intent.   I understand that.   And I understand how

**000464**

55

0000464

they can back it in and say, well, look it, you know, if he didn't intend to do it, and I know I am going to hear this argument, he didn't intend to do it, then, when he came to his senses, he should have run back and called -- all that stuff is true. But the fact before the jury is -- the question is did he cause her death by the stabbing.

MR. LONG: I disagree, because the IPI instructions that we had already gone through don't say anything about the stabbing. It's did his actions -- did he perform the acts which caused her death. And then, did he have an intent to not act in justification.

So, for those reasons -- I don't know how to cure it necessarily, Judge.

THE COURT: Is the word stab even in the instructions?

MR. LONG: No.

THE COURT: I didn't think it was.

The first proposition, "that the defendant performed the acts," plural, "which caused the death of Cassandra Frazier."

MR. JAQUAYS: Right. And the acts that they have informed us that they allege caused the death was the stabbing of her. That's what they told us.

000465

56

0000465

1    They started off, Judge -- it's not evidence,
2 but they put us on notice that these are -- they are
3 saying are the acts.

4    Now, they want to say well, we want to not tell
5 you about certain acts, but we will just kind of bring
6 them later on and throw them into the mix.

7    THE COURT: Well, I mean, in charging the case
8 before the Grand Jury, or presenting it to the Grand
9 Jury, does the Grand Jury have to return an indictment
10 that lists every single act that occurred in order to
11 make that a part of the charge? Otherwise, we would
12 have 1000-page indictments.

13    MR. JAQUAYS: I am not suggesting they have to
14 list everything, but if you are going to attribute it to
15 the stabbing, that's what you are attributing it to.
16 That's what we are talking here. You are saying the
17 stabbing caused the death. And I think the doctor
18 testified too, the stabbing caused the death.

19    MR. LONG: By her bleeding to death. That's
20 how she made it to the hallway.

21    THE COURT: Right. And the doctor specifically
22 testified that she would not have bled to death had she
23 had proper medical -- actually, he said, first aid, I
24 think, it was, and even medical. Just a matter of

**000466**

57

0000466

1  simple first aid just by pressure.

2          MR. JAQUAYS:  Right.  Knowing what to do.

3          THE COURT:  So, you know, I think that's been

4  covered with the pathologist, that it was more than just

5  the stabbing.  It was not getting any kind of help or

6  care whatsoever.

7          I think the State's position is defendant

8  wasn't just passive, he was active in preventing her

9  from getting that care.  So, that is the part of the act

10 or acts.  And it's not just the stabbing.  That's what

11 started it, certainly.  That's what -- but it was much

12 more than that, the way I understand everything.

13         MR. JAQUAYS:  I could even -- although, I don't

14 concede it, because I still -- I believe they are bound

15 by what they have charged.  But I can see the

16 extrapolation when we can get into pushing her back, but

17 I haven't mentioned push.  I am talking about going to

18 the purse.  That's all I have said so far.

19         MR. LONG:  My problem is, when he emphasized

20 the stabbing, it misleads the jury into believing that

21 they can only -- they are only looking at the stabbing

22 aspect.

23         THE COURT:  Here is what we will do:  I am

24 going to sustain the objection. Stay away from the

**000467**

58

0000467

Exhibit G

Affidavit

Attorney visitation sheet

Affidavit of defendant confession



# PAUL J. KAUPAS
## *WILL COUNTY SHERIFF*

Will County Courthouse
14 W. Jefferson Street
Joliet, Illinois 60432

Telephone: 815/727-8895
Fax: 815/727-8565
Website: www.willcosheriff.org

May 1, 2013

Mr. Robert J. Chapman #B78512
Menard Correctional Center
P.O. Box 1000
Menard, Illinois 62259

RE: Freedom of Information Act Request

Mr. Chapman,

I am in receipt of your Freedom of Information Act request seeking Will County Adult Detention Facility documentation relevant to your incarcerations from 2002 through 2005, as well as attorney visitation sign-in sheets from February 23, 2005 through October 31, 2007.

Enclosed you will find copies of your inmate file for four WCADF incarcerations fitting into the time frame of your request; two in 2003, one in 2004, and one in 2005.

Please be advised that the attorney visitation information you are seeking, with the exception of the one page document I have enclosed, is no longer available due to the fact that pursuant to records keeping statutes of the State of Illinois the visitation log books no longer exist.

Feel free to contact me if there is any further information you are seeking, and thank you for submitting your request to the Will County Adult Detention Facility.

Sincerely,

*Mary Fran Niemann*

MARY FRAN NIEMANN
Will County Adult Detention Facility
Inmate Records Supervisor/FOIA Officer
95 South Chicago Street
Joliet, Illinois 60436

MFN/mfn

Enclosures

ISP

CIMIS

Will County Adult Detention

**Visit Log**

4/29/2013

14:24

Page 1 of 1

Visit list for: **2005-0001537 CHAPMAN, ROBERT JAMES**

| Date | Time In | Time Out | Visitor Name | Visitor DOB | Housing | Type |
|------|---------|----------|--------------|-------------|---------|------|
| 09/17/2007 | 14:20 | 14:55 | YOUNG, ANGELA | | 00-BB-01-39 | Attorney |
| 08/31/2007 | 00:00 | 00:00 | CHAPMAN, WANDA | | 00-BB-01-39 | Error |

STATE OF ILLINOIS )
                  ) SS
COUNTY OF Randolph )

## AFFIDAVIT

I, Robert Chapman being first duly sworn upon my oath depose and state that the following matters are both true and correct made upon personal knowledge and belief, and if called as a witness, I am competent to testify thereto: that when I arrive home Cassandra began yelling at me, because she knew I had been getting high off Cocaine and that I had spent the money I made that day, which normally I share with her. Which she ask me about the money I told her I didn't have any money, She got madder than Usually, trying to ignore her, I went in the bathroom to take a shower, She came in their yelling at me when I came out she was still yelling. Still trying to not fight with her, I got into bed and when I seen She wasn't going to stop, I got up out the bed and I went to the closet to get my clothe, I told her if she didn't stop this Hollering at me that I would leave, So she did stop and then I got back into bed, a few minute pass then all of a sudden she stabbed me in the leg and I jump up to get out of the way, she kept coming at me with the knife, I was angry and afraid for my life, trying to protect myself, when she was swing that knife, I caught her hand with the knife in it, wrestle it away from her, even when I got the knife away from her she was kicking and swinging her arm at me before I knew it I was stabbing her with the knife, we fell off the bed and I was still swing that knife and as I was getting up, She told me she love me and I push up off her using the left side of her neck, I didn't realize that I still had the knife

Page 1 of 2

After I got up I realize that the Knife was in her neck, I Freak out, I got up out of their like always when we fight, I got dress, I saw she wasn't moving then all of a sudden, she started moving, and I was still getting dress. I was still look back toward her and she pull the Knife out as I was still standing their, she started to Crawl out after she pull the Knife out, I didn't Know if she still had the Knife or not, so when she came Crawling toward me, she stood up right before she got to me, I push her back thinking she was going to Stabb me again, then I ran out of the apartment closing the door behind me, I ran toward essing essington + Jefferson I was running to get help, which I flag this lady Down, she call help for the victim for me, And when Officer came He call help for me, I was taken to St Jospheh Hospital. Stich up and arrested

This was a pattern, when we fought it didn't matter who started the fight, I still went to jail even if I was protecting myself from Cassandra, I still went to jail, So after any altercation even a argument with her I would leave. We both was arrested for Domestic Violence and went before the Judge

Subscribed and sworn to
before me on the 27 day
of Feb. 2015

Jennifer Clende
NOTARY PUBLIC

Respectfully submitted,


Robert Chapman

JENNIFER CLENDENIN
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
May 29, 2018

Exhibits H

wait to see what the evidence is

Subpoena

1   STATE OF ILLINOIS )
                      ) SS:
2   COUNTY OF W I L L )

3    IN THE CIRCUIT COURT FOR THE TWELFTH JUDICIAL DISTRICT
                     WILL COUNTY, ILLINOIS
4
    THE PEOPLE OF THE          )
5   STATE OF ILLINOIS,         )
                               )
6                              )
                               )
7          vs.                 )  05 CF 391
                               )
8                              )
    ROBERT CHAPMAN             )
9

10

11          REPORT OF PROCEEDINGS HAD at the hearing of the

12  above-entitled cause, before the Honorable DANIEL J.

13  ROZAK, Judge of the Twelfth Judicial Circuit, Will

14  County, on the 24th of JULY, 2007.

15          PRESENT:

16
            HON. JAMES GLASGOW,
17          STATE'S ATTORNEY OF WILL COUNTY, by
            MESSRS. JAMES M. LONG and DANT T. FOULK,
18          Assistant State's Attorney,
                Appeared on behalf of the People;
19
            MESSRS. EDWARD R. JAQUAYS and ZACHARY POLLACK,
20              Appeared on behalf of the Defendant.

21                       * * * * *

22

23  Peter J. Paris
    Official Court Reporter
24  #084-002875

                                        **000151**

                        1

1   client, since his client is the party. Only the

2   opponent may enter that as a hearsay exception. So, if

3   there is another hearsay exception he wishes to rely on,

4   that may be admissible. But under the exception the

5   State is using it, the party opponent exception, it's

6   inadmissible.

7           THE COURT: Okay. You want to address that Mr.

8   Jaquays?

9           MR. JAQUAYS: I will hold, Judge, until we see

10  what the evidence plays out.

11          THE COURT: All right. With that then, is

12  everybody ready?

13          MR. JAQUAYS: Judge, I have a motion to exclude

14  witnesses.

15          THE COURT: That's granted. It's reciprocal.

16  You both police your own witnesses.

17          MR. JAQUAYS: I would also note, Judge, the

18  State asked, and my client concurs, that after the

19  victim's sister testifies, that she can stay in the

20  courtroom, and we have no objection to that.

21          THE COURT: Okay. Fine.

22          MR. JAQUAYS: Could I have just a moment to

23  speak?

24          THE COURT: Sure.

**000159**

04 – 25841
04 – 25499
04 – 25722

STATE OF ILLINOIS)
                 )SS
COUNTY OF WILL )

# IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## WILL COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS

# POOR PERSON

VS

05 CF 391

ROBERT CHAPMAN

CASE NO: _____

Joliet Police Department
150 W. Jefferson St.
TO:     Joliet, IL 60432

**SUBPOENA**

YOU ARE COMMANDED to appear to testify before the Honorable_____ **Judge Rozak**

in Courtroom_____ **404** _____ at _____ **Will County Courthouse, 14 W. Jefferson, Joliet**_____ , Illinois,

(Insert name of building, address, city)

on _____ **August 2, 2005** _____ , 20____ , at ___ **9:30 a.m.** ___ (a.m.) (p.m.)

YOU ARE COMMANDED ALSO to bring the following: Any and all reports between February 1, 2004 and
February 21, 2005 involving domestic disputes between Cassandra Frazier and Robert Chapman both of 120 Twin
Oaks Drive, Joliet, IL (There is no need at this point to include reports related to events occurring on February 22, 2005
which involved the death of Cassandra Frazier.)
in your possession or control.

YOUR FAILURE TO APPEAR IN RESPONSE TO THIS SUBPOENA WILL SUBJECT YOU TO PUNISHMENT FOR
CONTEMPT OF THIS COURT.

In lieu of an appearance, you may mail the requested
records/documents to the address below before 8/2/05.

June 28, 2005

Witness,_____ , 20____

_Pamela J. McGuire_

(Seal of Court)

PAMELA J. McGUIRE
Clerk of the Circuit Court

BY:_____
(Deputy)

I served the subpoena by handing a copy to_____

on _____ , 20____   I paid the witness $_____ for witness and mileage fees.

Signed and sworn to before me

_____ , 20____

_____
(Notary Public)

RECEIVED
JUL 05 2005
JOLIET POLICE RECORDS

(Plaintiff's attorney or plaintiff if he is not represented by an attorney)

NAME:          Assistant Public Defender
ATTORNEY FOR:  Robert Chapman, Defendant
ARDC#:
ADDRESS:       58 E. Clinton Street, Suite 210
CITY:          Joliet, IL  60432
TELEPHONE:     (815) 727-8666

Court - Original     Receiving Party - Copy

**14A-3** (Revised 03/01)  2 Part Form

7/12/05

**For Public Defender's Office Use Only**



Exhibit I

STATE OF ILLINOIS )
) SS:
COUNTY OF W I L L )

### IN THE CIRCUIT COURT FOR THE TWELFTH JUDICIAL DISTRICT WILL COUNTY, ILLINOIS

I, Peter J. Paris, an Official Court Reporter in the Circuit Court of Will County, do hereby certify that I reported in shorthand the proceedings had at the hearing of the aforementioned cause; that I thereafter caused the foregoing to be transcribed, which I hereby certify to be a true and accurate transcript taken to the best of my ability of the proceedings had before the Honorable DANIEL J. ROZAK, Judge of said Court.

_____
Official Court Reporter

Dated this 13th day
of DECEMBER, 2007.
CSR# 084-002875

**000102**

1 happy to repeat --

2      A.   Could you repeat the question?

3      Q.   Sure.

4           When you use the term "led me to believe,"

5 you're not saying that Mr. Chapman actually told you

6 something, you are saying I am interpreting what he told

7 me, and that's what I believe?

8      A.   No.   When I say "led me to believe," what I am

9 saying is that the information Mr. Chapman gave me in

10 its entirety, not just perhaps one statement, but

11 throughout several, because we were together for several

12 hours, put me to believe that he was 100 percent trying

13 to convey to me that thought.

14      Q.   And, I believe, you said you were together for

15 several hours?

16      A.   Correct.

17      Q.   So, I gather, what you mean, when you were

18 together for several hours, you weren't just sitting

19 there, you were talking to him, interviewing him, asking

20 him questions, asking him information concerning the

21 events of that night?

22      A.   Correct.

23      Q.   So, when we have a tape recording that may be

24 11 to 14 minutes, there is a lot more questions that you

**000339**

000340

1  asked him?

2      A.   Yes, sir.

3      Q.   That we're not privy to, as we sit here?

4      A.   Correct.

5      Q.   Now, one of the things that led you to believe

6  was the question of the blood on the bed, the fact that

7  it was predominantly on one side and none on the other?

8      A.   Correct.

9      Q.   Caused you some concern, I think, was the way

10 you put it?

11     A.   Correct.

12     Q.   Is it, in fact, true that all Mr. Chapman told

13 you is that he was in bed, the incident in earnest

14 started when he was stabbed by Cassandra?

15     A.   Correct.

16     Q.   Okay.   And that from that point over, he rolled

17 over and tried to grab her, because she was coming at

18 him again?

19     A.   Correct.

20     Q.   So, that immediately upon being stabbed, he

21 moved to her side of the bed, because that's the side

22 she was on, isn't that true?

23     A.   I don't believe he said her side of the bed.

24 He did say he rolled over.

1    MR. LONG:  Basically, the first part of the
2  portion was he wanted her to know what it feels like to
3  stab a nigger.

4    THE COURT:  Okay.  And now, this last sidebar
5  also deals with the notes.  So, let's just address it
6  all at one time.

7    I think, what you just indicated, Mr. Jaquays,
8  is you never got the notes, is that right?

9    MR. JAQUAYS:  Just -- my recollection of the
10  first sidebar, Judge, had to do with my objection that
11  it was beyond the scope.

12    And then, this third sidebar is after you
13  overruled that part, is that they tried to say that --
14  he was trying to corroborate with the notes, and this is
15  when the notes came in.  And I am objecting to the notes
16  that were not provided to us.

17    THE COURT:  Okay.  They weren't provided in
18  discovery.  And, I believe, it was Mr. Foulk said they
19  don't have to because it is rehabilitation.

20    MR. FOULK:  One reason why we did -- at this
21  point, we haven't asked to introduce that item into
22  evidence yet.  What we are simply showing to the
23  detective is to refresh his recollection.

24    It appears that Mr. Jaquays' statement -- or

Exhibit J

Ware Hearing
Affidavit

# INDEX

PETER PARIS
March 6, 2007
PAGE 1 TO 16

| LIST OF WITNESSES | DX | CX | RDX | RCX |
|---|---|---|---|---|
| Pastor Herman D. Ware | 4 | 13 | 14 | |

**000087**

1    A.   Okay. Let me kind of share. As a doctrine and

2  as a minister, it goes without saying. It's like

3  standard procedure. Any time a person comes to me as a

4  pastor and want to share things with me now, if he

5  shares something with me that could be a danger or a

6  harm to somebody else, you know, I am bound to seek help

7  for him. But if he come to me and share it with me about

8  situations that they are going through, and even though

9  they might not be in line with society's laws and

10  statutes, you know, that's something I have to keep to

11  myself. If -- or if I feel like it is a situation where

12  I am going to be backed into a corner, I will just say

13  that's something I don't need to hear.

14           MR. CONNOR:  Okay. Nothing further, your Honor.

15           THE COURT:  Cross?

16               CROSS EXAMINATION

17                    BY

18               MR. JAQUAYS:

19    Q.   Pastor, at the hospital, you had a conversation

20  with my client, is that correct?

21    A.   Yes, I did.

22    Q.   Is it true that he, in fact, asked you that --

23  started the conversation by saying this is a

24  conversation between you and he, as his pastor?  Didn't

**000098**

0000098

1    he say that?

2         A.   Yes, he did.

3         Q.   And did you consider it then to be confidential

4    in nature?

5         A.   Yes, I did.

6         Q.   And that you would not reveal the substance of

7    that conversation to others?

8         A.   Yes, I did.

9         Q.   And is that confidentiality in keeping with

10   your religion?

11        A.   Yes, it is.

12        Q.   Okay.

13             MR. JAQUAYS:   That's all I have, Judge.

14             THE COURT:   State?

15                    REDIRECT EXAMINATION

16                    BY

17                    MR. CONNOR:

18        Q.   When you talked to Detective Raasch, that was

19   not necessarily the way that you characterized the

20   conversations with Robert Chapman at the hospital when

21   you talked to the detective, correct?

22        A.   Like I said, when I talked to Robert, he

23   specifically asked me just to talk to me as a pastor.

24   When I talked to the detective, that intent was not in

**000099**

Exhibit K

State Closing Argument
Judge Statement during
        sentencing

1 was going to die or suffer great bodily harm. Once he

2 removed that knife from Cassandra Frazier, this is a

3 defendant, who as I told you at the beginning, is angry,

4 and he is going to bring it down tenfold on Ms. Frazier.

5 So, there is, in his mind, when they are asking

6 you to be convinced that the defendant had it in his

7 mind this belief that he was going to die or suffer

8 great bodily harm by Cassandra Frazier while he was

9 committing those acts, while he was stabbing her, it's

10 bunk, because he didn't have that belief.

11 His intent was clear. His actions were clear.

12 And this belief that they are going to ask you to try to

13 find doesn't exist. And you know that that belief

14 didn't exist, because he never says that he felt that he

15 was going to be hurt, at the very least be hurt, that he

16 was going to die, that she was going to kill him. You

17 don't hear any of that.

18 You hear on the tape how cold and calculated he

19 was. He says to her what he is going to do to her.

20 This isn't a guy that's in fear. This is a guy that's

21 taking control, and a guy who is inflicting pain, death

22 and great bodily harm on Ms. Frazier. And he is going

23 for those kill shots, and that's what happened here.

24 So, they will not convince you. They will not

000454

45

convince you by the burden that they have, that he was
acting -- that he had that belief that he was going to
die or suffer great bodily harm.

You look at his -- their next -- the next way
that they are going to ask you to find the defendant
guilty of second degree. And, that is, that he was
acting under this serious and sudden and intense passion
brought on by a serious provocation.

Serious provocation, I would imagine that they
are going to argue. They will stand up here and try to
convince you that -- they are going to make some
arguments that this was a just a sudden -- a brief
period of time. That when he took the knife from her,
he was just in this daze, this passion. He couldn't
control himself. And that's why he went to town on Ms.
Frazier. That's what they are asking you to find. This
passion just took him by his gutt and made him kill Ms.
Frazier. And you know that that is absolutely not true.
You know that, because he has done it in the past in a
prior domestic battery. You know that, because in the
arson, his intent there was the same as the intent here.
That he wants to cause harm to her.

This isn't a guy that is taken by passion. He
is motivated by anger, and he is pissed at this lady,

000455

46

1 and starts slicing. Maybe he doesn't know who it is.

2 That would be sudden passion, sudden. This sudden

3 element is totally devoid here. It does not exist. The

4 sudden passion he displayed was disarming her. That was

5 sudden. That's a reaction. A sudden movement, a

6 reaction, a nervous response, that's sudden. Disarming

7 someone is sudden. That's where the suddenness ends

8 here. There is nothing sudden about the rest of his

9 actions.

10 In fact, the rest of his actions are planned.

11 He comes up with a plan. "I am going to let you know

12 how it feels." The time he executes that plan. He lets

13 her know how it feels. So, there is no suddenness

14 there. That's a well-thought out, well-planned course

15 of action, a course of conduct he chose. It's not a

16 reaction to a sudden response, a course of conduct he

17 made a conscious decision to engage in.

18 Also, note that the conduct -- or the sudden

19 and intense passion had to exist at what point in time?

20 At the time of the killing. That's what the instruction

21 tells you.

22 At the time of this killing, Dr. Mitchell told

23 you something important. She expired. She bled to

24 death, basically, those wounds in her neck. At the time

1 necessary to deter others from committing the same crime;

2 that I think would help me somewhat with the range of

3 sentencing.

4 On the mitigation side, number one, his conduct

5 neither caused nor threatened physical harm to another or he

6 did not contemplate that it would do so, that is number two,

7 those certainly are not present in my opinion.

8 Number three and number four, I suppose you could

9 put together the defendant acted under a strong provocation

10 and there were substantial grounds tending to excuse or

11 justify the defendant's criminal conduct for failing to

12 establish a defense.

13 To the extent that I understand she was the

14 initial aggressor, the victim in this case, she stabbed him

15 first, no doubt about that, that is the only evidence I

16 heard; but I don't think that, all things considered, the

17 defendant's conduct should have continued on as far as it

18 did. Apparently the jury thought the same.

19 Number five really does not apply, in my opinion.

20 Number six, the defendant will compensate or has

21 compensated the victim, that simply can't be done in this

22 case, not in a murder.

23 - Number seven is prior history. I have already

24 addressed that as a factor in aggravation.

000562

0000562

Exhibit K

Initial Post Conviction Petition
725 ILCS 5/115-20
725 ILCS 5/115-7.4

## IN THE
## CIRCUIT COURT OF WILL
## COUNTY, ILLINOIS

PEOPLE OF STATE OF ILLINOIS )

      Respondents, )

                    NO: 05 CF 391

         v. )

ROBERT J. CHAPMAN )

      Petitioner. )

                 )

FILED
12 DEC 20 PM 1:40
CLERK CIRCUIT COURT
WILL COUNTY, ILLINOIS

## PETITION FOR POST-CONVICTION RELIEF

BY: *Robert Chapman*
BOX    1000
MENARD, IL. 62259
PRO-SE

CLAIM

I.

APPELLATE COUNSEL WAS INEFFECTIVE ON DIRECT
APPEAL DENYING PETITIONER HIS SIXTH AMEND AND
FOURTEENTH AMENDMENT RIGHTS GUARANTEED BY THE
UNITED STATES AND ILLINOIS CONSTITUTION.

1. Petitioner was denied due process and equal protection under the United
States Constitution and Illinois Constitution in the following particulars:

(a) Petitioner was denied his rights to effective assistance of Appellate Counsel
whereas Appellate Counsel failed to raise the following issue on direct re-
view:

1. Trial Court was in violation for Pastor/Penitent Privilege between petitioner
and Pastor. The Trial Court erred in allowing Pastor Ware to testify about
prior conversations with petitioner regarding a prior alleged arson involving
the victim. See exh. ( A ).

Not raising Pastor/Penitent issue on direct appeal denied petitioner's due
process rights under the sixth and fourteenth amendments of the United States
and Illinois Constitution. See People v. Mack, 167 Ill.2d 525, 668 N.E.2d
437 (1995):

> An Appellate Attorney is ineffective
> where the failure to raise an issue
> is objectively unreasonable and there
> is a reasonable probability that had
> the issue been raised, the conviction
> or sentence would have been reversed.

2. Here, given the fact that Appellate Counsel chose other issues to raise over
obvious issue(s) of a substantial constitutional violation, counsel was not
functioning at the level guaranteed to a defendant as required by the Standard
of **Strickland**.

-1-

C000387

CLAIM

II.

PETITIONER WAS DENIED EFFECTIVE ASSISTANT
OF TRIAL AND APPELLATE COUNSEL IN VIOLATION
OF HIS SIXTH AMENDMENT RIGHT UNDER THE U.S.
AND ILLINOIS CONSTITUTION.

2. Petitioner was denied due process and equal protection under the United
States Constitution and Illinois Constitution in the following particulars:

(a) Trial counsel was ineffective at trial for failure to object to Pastor's
( Ware ) statement which was different from his previous statement
that was presented to the Detective in the discovery. See exh. _B_ .

(b) Appellate counsel was ineffective on direct appeal for failure to raise
issue of ineffective assistance of trial counsel for failure to object to
different statement(s) made to the detective in discovery. See Napue v.
Illinois, 79 S.Ct. 1173, 360 U.S. 264 (U.S. Ill. 1959): Court held.

> Conviction obtained though use of false testimony,
> known to be such by representatives of the State,
> is a denial of due process, and there is also a
> denial of due process, when the State, though not
> soliciting false evidence, allows it to go un-
> corrected when it appears. U.S.C.A Const. Amend.14.

(c) Thus, it is clear that when false and misleading testimony by Pastor
( Ware ) went uncorrected, this testimony led to a conviction in vio-
lation of due process under the U.S. Const. Amend. 14.

-2-

C000388

CLAIM

III.

PETITIONER WAS DENIED HIS RIGHT TO EFFECTIVE
ASSISTANCE OF TRIAL COUNSEL WHEREAS TRIAL COUNSEL
CONCEDED PETITIONER'S GUILT PRIOR TO TRIAL. 6TH
AMENDMENT UNITED STATES AND ILLINOIS CONSTITUTION-
AL VIOLATION.

3.  Petitioner was denied due process and equal protection of law under the
United States and Illinois Constitution in the following particulars:

(a)  In instant case, the evidence at trial established self defense.

(b)  Trial counsel coerced petitioner and advised petitioner not to pursue self
defense instructions because the jury would not believe self defense evi-
dence or second degree/involuntary manslaughter. Therefore, trial counsel
clearly conceded to petitioner's guilt of first degree murder. *exh (c)*

(c)  (See attached affidavit); also see (TR. Lines 21-thru-24/Lines 1-thru-2 at
pages 6 and 7). See Murray v. Carrier, 477 U.S. 478, 91 L.Ed. 391, 106
S.Ct. 2639 (1986): Court held:

> "A single error of counsel may constitute
> ineffective assistance of counsel".

CLAIM.

IV.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL
COUNSEL 6TH AND 14TH AMENDMENTS VIOLATION OF THE
UNITED STATES AND ILLINOIS CONSTITUTION.

4.  Petitioner was denied due process and equal protection of the law under the
United States and Illinois Constitution in the following particulars:

(a)  Petitioner disire was to testify on his own behalf at trial.

(b)  Petitioner's trial attorney used scare tactics as well as coercion in regards
to petitioner's right to testify in his own behalf. Trial counsel's coercion
consisted of stating "You will be destroyed on the stand by the prosecutor".

-3-

C000389

exh(D)

See attached affidavit. Thus, petitioner was denied his 5th amendment right
to testify and 6th amendment right to effective assistance of counsel guaranteed
by the Illinois and United States Constitution when the Officer of the court
(Trial attorney) coerced the petitioner not to testify in his own behalf.
Relief is warranted.

CLAIM

V.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL AND
APPELLATE COUNSEL IN VIOLATION OF HIS 6TH AND 14TH AMEND.
RIGHTS GUARANTEED BY THE UNITED STATES AND ILLINOIS CONST.

5. Petitioner was denied due process and equal protection under the United
   States and Illinois Constitution in the following particulars:

(a) Trial counsel was ineffective for failure to investigate and call as a
    witness, an expert witness to support petitioner's second degree murder
    theory that the evidence would have shown provocation (aggression) from
    the victim. exh E

(b) Appellate counsel was ineffective for failure to incorporate in its appeal
    that trial counsel was ineffective for failure to investigate or call
    expert witness in regards to provocation evidence in instant case. See
    Nelson v. Hargett, 989 F.2d 847 (5th Cir. 1993): Court held:

> Trial counsel's failure to investigate
> may constitute ineffectiveness of counsel,
> but defendant must allege with specificity
> what the investigateion would have led to and how
> outcome of trial would have been different.

In instant case, had expert witness been called and an investigation done
provocation shown from victim would have rendered a different verdict, other
than first degree murder. Relief is warranted.

-4-

CLAIM

VI.

**PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL
ON DIRECT APPEAL IN VIOLATION OF HIS SIXTH AMENDMENT
U.S. AND ILLINOIS CONSTITUTION.**

6.  Petitioner was denied due process and equal protection under the United
    States and Illinois Constitution in the following particulars:

(a) Petitioner's appellate brief "failed to draw attention to anything in the
    record that might be arguably support the appeal"- A failure that left
    petitioner constructively without counsel on direct appeal.

(b) Trial counsel failed to file motion to supress petitioner's tape-recorded
    statement that it had been intentionally altered and statement does not
    reflect the questioning during interagation.

(c) Altering petitioner's statement during interagation prejudiced petitioner
    and denied him a fair and impartial trial guranteed by the sixth amendment
    of the U.S. and Illinois Constitution.

(d) Appellate counsel was ineffective for failure to raise issue of ineffective
    assistance of trial counsel for failure to motion to suppress petitioner's
    tape-recorded (altered) statement during interagation.

(e) In instant case, ineffective assistance of counsel is established as
    petitioner was prejudiced at trial, and prejudiced goes to the prong of
    **Strickland** and conviction must be set aside.

-5-

C000391

CLAIM

VII.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE
OF TRIAL AND APPELLATE COUNSEL IN VIOLATION
OF HIS SIXTH AMENDMENT RIGHTS UNDER THE U.S.
AND ILLINOIS CONSTITUTION.

7. Petitioner was denied due process and equal protection under the United
States and Illinois Constitution in the following particulars:

(a) Trial counsel failure to object to prosecution boistering of witness
testimony as well as the prosecution's mis-conduct and prosecution calling
petitioner a liar denied petitioner a fair and impartial trial. See exh.
( F ) ( 484- ~~505~~ 496 ).

(b) Appellate counsel's failure to incorporate ineffective assistance of trial
counsel in its appeal was a denial of petitioner's right to counsel on direct
appeal. See U.S. v. Cronic, 466 U.S. 648, 80 L.Ed. 657, 104 S.Ct. 2039
(1984): Court held:

> Trial counsel's failure to subject the
> prosecution's case to a meaningful ad-
> versary testing process may constitute
> a denial of due process and establish
> a per se violation of defendant's right
> to effective assistance of counsel.

C000392

PETITIONER WAS DENIED HIS 6TH AMENDMENT RIGHTS
TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND
ON DIRECT REVIEW. U.S AND ILLINOIS CONSTITUTION-
AL VIOLATION.

8.   Petitioner was denied due process and equal protection under the United

States and Illinois Constitution in the following particulars:

Trial counsel failed to object to State's witness extensive and detail

testimony concerning an alleged commission of crime of arson for which the

petitioner was not on trial for thereby causing prejudice violating due process.

People v. Lindgren, 79 Ill.2d 129, 402 N.E.2d 238; People v. Brown, 745 N.E.2d
                                          35  37   38
173.  See exh.  ( G )  Tr. pages 33, 34 and 35. Appellate counsel never raised

issue on direct review.


CLAIM

IX.

PETITIONER WAS DENIED HIS 6TH AMENDMENT RIGHT TO
EFFECTIVE ASSISTANCE of APPELLATE COUNSEL ON DIRECT
REVIEW IN VIOLATION OF THE UNITED STATES AND ILLINOIS
CONSTITUTION.

9.   Petitioner was denied due process and equal protection under the United

States and Illinois Constitution in the following particulars:

(a)  Trial counsel preserved issue (on post-trial motion) direct review whereas

trial court erred in not giving defendant's jury instruction #3 regarding

time limits relative to sufficient time for reflection in response to pro-

vocation. exh (H)

(b)  Appellate counsel was ineffective on direct review for failure to raise issue

C000393

that trial court erred for not giving defendant's jury instruction #3.  See

Carter v. Kentucky, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed. 2d 241:  Court

held:  Where defendant did not testify, the trial judge violated the 5th and

14th amendments by refusing to give defendant's tendered jury instruction.

Thus, relief is warranted.


CLAIM.

X.


PETITIONER WAS DENIED HIS 6TH AND 14TH AMENDMENTS
RIGHTS UNDER THE UNITED STATES AND ILLINOIS CONSTITUTION
WHEREAS TRIAL COUNSEL AND APPELLATE COUNSEL WAS IN-
EFFECTIVE.


10.   Petitioner was denied due process and equal protection under the United
      States and Illinois Constitution in the following particulars:


(a)   Petitioner was denied effective assistance of tria counsel whereas counsel
      failed to object to prosecutor's constructive amendment of the indictment.

(b)   Appellate counsel was ineffective for failure to raise issue of ineffective
      assistance of trial counsel for failure to object to prosecutor's construc-
      tive amendment of the indictment.  See People.v. Kincaid, 87 Ill.2d 107,
      124, 429 N.E.2d 508 (1981):  An indictment may be considered amended when
      prosecution or the court either literally or constructively alters the
      charging terms of an indictment after it has been returned by the grand
      jury.  Failure of trial counsel to object to petitioner's indictment being
      constructively  amended by prosecution prejudiced petitioner and denied the
      petitioner a fair and impartial trial guaranteed by the U.S. and Illinois

-8-

C000394

Constitution.

SIXTH AMENDMENT ILLINOIS AND UNITED STATES
CONSTITUTIONAL VIOLATION: INEFFECTIVE ASSI-
STANT OF APPEAL COUNSEL FOR FAILURE TO RAISE
ISSUE OF PROOF BEYOND A REASONABLE DOUBT ON
DIRECT REVIEW.

1. Petitioner's United States and Illinois sixth amendment rights were violated
   in the following particulars:

(a) Trial counsel preserved issue of reasonable doubt to petitioner's guilt in
    motion for a new trial. See attached exh. (H).

(b) Appellate counsel was ineffective on direct review for not incorporating reason-
    able doubt issue on direct appeal. **Strickland.**

(c) Petitioner was not proven guilty of first degree murder beyond a reasonable
    doubt.

(d) In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970): The due
    process clause protects an accused against conviction... necessary to constitute
    the crime...

(e) There was "no" sufficient evidence to prove petitioner guilty beyond a reasonable
    doubt of first degree murder.

(f) See People v. Zizzo, 301 Ill. App.3d 481, 703 N.E.2d 546 (2nd Dist. 1998).
    Defendant did not waive... sufficiency of the evidence and issue may be challenged
    for the first time on appeal.

(g) It was clear and obvious that the victim stabbed petitioner and provocation was
    established warranting a lesser degree of conviction other than first degree murder.
    See attached reports. *Filed with post-conviction petition.*

C000515

(h)  See  Kelly v. U.S. 29 F.3d 1107  (7th CIR. 1994):  Court held:  The standard

under Gray v. Greer, 800 F.2d 644 (7th. Cir. 1986):

> "Appellate Counsel is ineffective
> if counsel fails to raise issues
> that are (1) obvious, and (2) clearly
> stronger than ones raised.

Relief is warranted in this case.

C000516

## Claim 12

Petitioner was denied effective assistance
of Trial and Appellate Counsel in violation of
his 6th and 14th Amendment rights guaranteed
by the United States and Illinois Constitution.

Petitioner was denied due process and equal
protection under the U.S. and Illinois Const.
in the following particulars

Trial Counsel was ineffective for failing to
call any witness in support of a viable defense
in support of an Affirmative defense was
objectively unreasonable trial strategy

See People v Bryant 330 Ill. Dec 49, 907 N.E.2d 862

Counsel failure to call the defendant to testify
left unsupported his claim of defendant Affirmative
defense
See Exh E Tr page 159 line 13-14

Appellate Counsel was ineffective for failure
to incorporate in it's appeal that trial Counsel
was ineffective for failing to call witness in
support of a viable defense of Affirmative defense

C000395

## Claim 14

Petitioner was denied due process of law in
Violation of his 14th Amendment right.

Petitioner asserts that Prosecutor violated his due
process right that require a charging instrument
to adequately notify a defendant of the offense
charged with sufficiently specificity to enable
proper defense. People v. Baldwin 764 N.E. 2d 1126
Exh L See Tr page 459 - 468

A person right to reasonable notice of a charge
and an opportunity to mount a defense in Court is
basic system of jurisprudence. In re Oliver 333 U.S.
257, 273, 685 S. Ct. 449, 507, 92 L. Ed 682, 694 (1948) one
of the oldest and most fundamental Components of
due process is the general rule that Criminal
proceeding be initiated by an information or indict-
ment contain "All facts and circumstances which
Constitute the offense ... stated with such certainty
and precision, that the defendant ... may be able to
determine the species of offense they constitute, in
order that he may prepare his defence accordingly
and that their may be no doubt as to the judgment
which should be given, if the defendant be convicted

See Alexander 93 Ill. 2d at 79, 66 Ill. Dec. 326, 442 N.E. 2d 887
A defendant Cannot prepare an adequate defense to a
Charge that is identified after hearing the evidence
presented at trial

C000397

## Claim 15

Petitioner was denied due process of law in violation of his 14th Amendment right

Petitioner asserts <u>Prosecutorial Misconduct</u> by Prosecutor failure to correct the record concerning Karen Bergin and Herman Ware testimony

Elements of Brady prosecutorial misconduct claims are (1) evidence at issue must be favorable to accused either because it is exculpatory or because it is impeaching (2) evidence must have been suppress by state either willfully or inadvertenly and prejudice must have ensued

See exh (B) Affidavit
Police report page 1-3

See Banks v Dretke 124 S. Ct. 1256 at 1261 (2004)

The materiality standard for Brady claims is met when favorable evidence could reasonable be taken to put whole case in such a different light as to undermine confidence in the verdict. Kyles U.S. at 435, 115 S. Ct. 1255

C000398

## Claim 16

Petitioner was denied due process of law in violation of the 14 Amendment right to fair trial.

Petitioner assert that important witness for the State in murder prosecution falsely testified that defendant admitted to him that he started a fire at Victim home

Conviction obtained through use of false testimony known to be such by representative of the State is a denial of due process and there is also a denial of due process, when State though not soliciting false evidence, allow it to go uncorrected when it appears

Principle that a state may not know knowingly use false evidence, including false testimony, to obtain a tainted Conviction implicit in any Concept of ordered liberty, does not ceased to apply merely because the false testimony goes to defendant propensity to Commit murder

See Exh (B) Affidavit

Tr page 186 line 3-10

See 79 S.Ct 1173; 360 U.S. 264 Napue v. People
Also Mooney v Holohan 294 U.S. 103; 55 S.Ct 340

C000399

Petitioner was denied his 6th Amendment right to effective assistance of Appellate Counsel on Direct review in Violation of the United States and Illinois Constitution

Petitioner was denied due process and equal protection under the U.S. and ILL Const. in the following particulars:

Appellate Counsel was ineffective on direct review for failure to raise issue of prosecutional misconduct in State Knowingly or unknowingly use false testimony

Martire v. Wainwright 811 F 2d 1430

C000400

## Claim 17

Petitioner was denied due process of law in
Violation of the 14th Amendment rights to fair trial

Petitioner assert Prosecution Violated his due
process right when it fail to disclose police report
Contain Confession of defendant, who testified
Concern the confession made to him.
               See exh J Affidavit

See People v. Green 133 Ill App 2d 244, 272 N.E 2d 721

Practicalies of trial demand that it be made available

Cite. Moor v. Marr 254 F.3d 1235 at 1244
Under Brady v. Maryland 373 U.S. 83, 87, 83 S.Ct 1194
10 L. Ed. 2d 215 (1963) the prosecution violates a defendant
due process right when it fail to disclose evidence
(reports) favorable to the defendant that was
material either to guilt or punishment.
Evidence is material if their is a reasonable
probability that had the evidence (reports) been
disclose to the defense, the result of the proceeding
would have been different. Id at 682, 105 S.Ct 3375
A reasonable probability is a probability sufficient
to undermine Confidence in the outcome of Case.

102

C000401

The question is not whether the defendant would more likely than not have recieve a different verdict with the evidence (reports), but whether in it's absence he recieve a fair trial, understood as a trial resulting in a verdict worthy confidence.

Petitioner was denied his 6th and 14th Amendments right to effective assistance of Appellate Counsel on direct review in violation of the U.S. and Il. Constitution.

Petitioner was denied due process and equal protection under the U.S. and Illinois Constitution in the following particulars.

Appellate Counsel was ineffective on direct review for failure to raise issue of prosecution Misconduct in State appeal.

See Robinson v. Maynard 829 F.2d 1501 (1987)

C000402

## Claim 18

Petitioner was denied effective Assistant of Appellate Counsel in Violation of his Sixth and fourteenth amendment right under The U.S. and Illinois Constitution

Appellate Counsel's failure to incorporate the lower Courts' ruling allow Herman Ware testimony of defendant's allege prior act of arson, that was in his original PLA on direct appeal
see exh K
Affidavit

see U.S. v. Cronic 466 U.S. 648, 80 L.Ed 657
104 S.Ct 2039 (1984

# Claim 19

Petitioner was denied effective Assistance of
trial and Appellate counsel in violation of his
6th and 14th Amendment right under U.S and
Illinois Constitution

Petitioner was denied due process and equal
protection under U.S and Illinois Constitution
in the following particular:

Trial Counsel was ineffective at trial for
failure to object to Prosecution misstatement
of fact not in evidence during closing argument.
See exh [4] Tr page 445 line 16, page 447 line 12
page 449 line 22-24; page 452 line 12-13, 20.; page 487
line 16; 488 line 7-8; page 491 line 21-24; page 492 line 1-4
page 494 line 18-23; page 495 line 1-4, page 442 line 10-16
See also Police report # 25-33, 41

See People v Roger 172 Ill. App. 3d 471, 526 N.E.2d 655

Appellnt Counsel was ineffective on direct review
for failure to raise issue of Trial Counsel
ineffective for failure to object to Prosecution
Misstatement of facts not in evidence during
Closing argument.
See Grubbs v Singletary 900 F. Supp. 425 (1995)

102                                                    C000404

Petitioner was denied due process of law in Violation of his 14th Amendment right.

Petitioner assert Prosecutor misstated the evidence by arguing allege facts not in evidence during closing arguement

See exh. Tr page 442 line 10-16; page 445 line 16 page 447 line 12; page 449 line 22-24; Page 452 line 12-13, 20; page 487 line 16; 488 line 7-8; page; Page 491 line 21-24; page 492 line 1-4; page 494 line 18-23 page 495 line 1-4
   see exh police report # 25-30, 41

Petitioner was denied his 6th and 14th Amendment right to effective assistance of Appellate Counsel on direct review in Violation of the U.S. and Illinois Constitution

Petitioner was denied due process and equal protection under the U.S. and Ill. Const in the following particulars:

Appellate Counsel was ineffective on direct review for failure to raise issue of prosecutional misconduct in State appeal

C000405

# Claim 20

Petitioner was denied effective Assistant of Trial and Appellate Counsel in violation of his Sixth and fourteenth Amendment rights under U.S. and Illinois Constitution

Petitioner was denied due process and equal protection under the United State and Illinois Constitution in the following particular:

Trial Counsel was ineffective at trial for failure to object to Prosecution Misstatement of law to Jury to "What Constitute provocation" Sudden Intense Passion

See exh(A) Tr page 500 - 505

Black Law Dic

Passion - In the definition of manslaughter as homicide committed without premeditation but under the influence of Sudden "passion or heat of passion" this term means any of the emotion of the mind known as rage, anger, hatred, furiors, resentment, or terror, rendering the mind in capable of cool reflection

See People v Walker 55 Ill App 2d 292, 204 N.E. 2d 594
People v Bartley 263 Ill 69, 104 N.E 1057

C000406

Petitioner was denied due process of law in violation of his 14th Amendment right

Petitioner asserts Prosecution Misconduct by Prosecutor Misstated the law to Jury as to what constitute provocation "Sudden and Intense passion

See exh(l)Tr page 500 - 505

Passion - In the definition of manslaughter as homicide committed without premeditation but under the influence of sudden" passion or heat of passion" this term means any of the emotion of the mind Known as rage, anger, hatred, furious, resentment or terror, rendering the mind incapable of cool reflection

See People v. Walker 55 Ill App. 2d 292, 204 N.E. 2d 594

Also People v. Bartley 263 Ill. 69, 104 N.E 1057

Petitioner asserts Prosecution Misconduct by prosecutor Misstated the law to jury argue that their is a duty to retreat and that Victim stabbing defendant is Okay

Exh Tr page 491 line 13-24

see people v Estes 127 Ill. App. 3d 642, 469 N.E. 2d 275

C000407

## Claim 23

Petitioner was denied effective assistant of Trial and Appellate Counsel in Violation of His 6th and 14th Amendment rights under the

Petitioner was denied due process and equal protection under the U.S and Illinois Constitution in the following particular -

Trial Counsel was ineffective at trial for failure to investigate and introduce the back ground of the Victim, Cassandra Frazier in this case, eventhough such background was obviously relevant to the question as to whether or not petition acted in self-defense. It was also relevant to the "State of mind" of the petitioner, with respect to what his personal Knowledge was as to Character, reputation and general Knowledge of the overall action of the Victims as far as what he Knew and believe about her. See exh M, N

See Hanson v. Thieret 138 Ill. App 3d 530, 485 N.E. 2d 1144, 92 Ill. Dec. 901

The failure of defense Counsel to present the

C000410

background and general character of the
victim in this particular case, deprived the
petitioner of an effective defense. Any deprivation
of any meaningful challenges will and should
render the entire process meaningless for it
would only produce a lopside conclusion, which
would be representative of a complete lack of
any defense.

Appellate Counsel's failure to incorporate
ineffective assistance of trial counsel in it's
appeal was a denial of petitioner right to
counsel on direct appeal. See U.S. v Cronic
466 U.S. 648, 80 L.Ed. 657, 104 S.Ct 2039 (1984).
Court held:
    Trial Counsel's failure to subject the
    prosecution's case to a meaningful
    adversary testing process may constitute
    a denial of due process and establish
    a per se violation of defendant's right
    to effective assistance of Counsel.

C000411

(725 ILCS 5/115-20)
Sec. 115-20. Evidence of prior conviction.

(a) Evidence of a prior conviction of a defendant for domestic battery, aggravated battery committed against a family or household member as defined in Section 112A-3, stalking, aggravated stalking, or violation of an order of protection is admissible in a later criminal prosecution for any of these types of offenses when the victim is the same person who was the victim of the previous offense that resulted in conviction of the defendant.

(b) If the defendant is accused of an offense set forth in subsection (a) or the defendant is tried or retried for any of the offenses set forth in subsection (a), evidence of the defendant's conviction for another offense or offenses set forth in subsection (a) may be admissible (if that evidence is otherwise admissible under the rules of evidence) and may be considered for its bearing on any matter to which it is relevant if the victim is the same person who was the victim of the previous offense that resulted in conviction of the defendant.

(c) In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:

(1) the proximity in time to the charged or predicate offense;

(2) the degree of factual similarity to the charged or predicate offense; or

(3) other relevant facts and circumstances.

(d) In a criminal case in which the prosecution intends to offer evidence under this Section, it must disclose the evidence, including statements of witnesses or a summary of the substance of any testimony, at a reasonable time in advance of trial, or during trial if the court excuses pretrial notice on good cause shown.

(e) In a criminal case in which evidence is offered under this Section, proof may be made by specific instances of conduct as evidenced by proof of conviction, testimony as to reputation, or testimony in the form of an expert opinion, except that the prosecution may offer reputation testimony only after the opposing party has offered that testimony.
(Source: P.A. 90-387, eff. 1-1-98.)

(725 ILCS 5/115-7.4)

Sec. 115-7.4. Evidence in domestic violence cases.

(a) In a criminal prosecution in which the defendant is accused of an offense of domestic violence as defined in paragraphs (1) and (3) of Section 103 of the Illinois Domestic Violence Act of 1986, or first degree murder or second degree murder when the commission of the offense involves domestic violence, evidence of the defendant's commission of another offense or offenses of domestic violence is admissible, and may be considered for its bearing on any matter to which it is relevant.

(b) In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:

(1) the proximity in time to the charged or predicate offense;

(2) the degree of factual similarity to the charged or predicate offense; or

(3) other relevant facts and circumstances.

(c) In a criminal case in which the prosecution intends to offer evidence under this Section, it must disclose the evidence, including statements of witnesses or a summary of the substance of any testimony, at a reasonable time in advance of trial, or during trial if the court excuses pretrial notice on good cause shown.

(d) In a criminal case in which evidence is offered under this Section, proof may be made by specific instances of conduct, testimony as to reputation, or testimony in the form of an expert opinion, except that the prosecution may offer reputation testimony only after the opposing party has offered that testimony.

(Source: P.A. 97-1036, eff. 8-20-12.)